251 N.J. Super. 256 (1991)
597 A.2d 1101
WILLIAM CAFFERATA AND SHERYL CAFFERATA, HIS WIFE, PLAINTIFFS-APPELLANTS,
v.
IRVING G. PEYSER, M.D. AND MITCHELL S. CARTER, M.D., DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted October 1, 1991.
Decided October 17, 1991.
*257 Before Judges PRESSLER, SHEBELL and D'ANNUNZIO.
Seeber, Bowkley, Greb & Zelante, attorneys for appellants (C. William Bowkley, Jr., on the brief).
Giblin & Combs, attorneys for respondents (Jeremy P. Cooley and Steven G. Schwesinger, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
The question raised by this appeal is whether plaintiff's medical malpractice action is barred by the entire controversy doctrine by reason of his pro se settlement of a prior Special Civil Part action brought against him by the defendants-physicians' professional association to recover its bill for services for the same medical procedure of which the malpractice suit complains. We are satisfied that under the circumstances here, application of the entire controversy doctrine is entirely inapposite. Accordingly, we reverse the summary judgment dismissing the malpractice action on that preclusionary ground.
The relevant facts are not in dispute. Plaintiff William Cafferata, whose wife Sheryl Cafferata sues per quod, consulted defendant Irving G. Peyser, a vascular surgeon, late in 1986 complaining of ulcers on his left leg. Peyser recommended *258 surgery and, assisted by his partner, defendant Mitchell S. Carter, he performed a surgical procedure in January 1987 consisting of bilateral varicose vein ligation and stripping. Plaintiff continued under defendants' post-operative treatment for the next several months. In March 1987, however, because of his dissatisfaction with his progress, plaintiff consulted another physician who took over his care and apparently told him, after reviewing the medical records, that Dr. Peyser had done inadequate pre-operative testing.
In the interim, plaintiff had apparently transmitted Peyser's bill, in the amount of $1,275, to his health insurance carrier. Although the record does not indicate when the carrier finally paid the bill, it is at least clear that it was not paid as of June 1987, when a complaint was filed, as an apparently routine collection matter in the Special Civil Part, by "Irving G. Peyser, M.D. & Mitchell S. Carter, M.D., P.A." against plaintiff and his wife demanding payment. They promptly responded by the filing of a "To Whom It May Concern" letter, stating that:
We are responding to the summons and complaint in [sic] which we received on June 24, 1987. We have submitted the bill to the Ins. Company. The payment will be mailed to Dr. Peyser directly from the Ins. Company, as soon as possible.
Thank you,
William R. Cafferata
Sheryl Cafferata
The next recorded notation respecting the progress of the Special Civil Part collection action informs that a settlement conference was conducted on April 15, 1988, by the trial judge's law secretary, participated in by plaintiff and, for the professional association, by one Susan Ellison, who is neither an attorney nor, apparently, a principal or professional employee of the association. Nor does the record indicate whether she is a lay employee of the professional association itself or of the agency which collects the association's bills. While there is no record of the conference itself, it appears that by that time, plaintiff's carrier had paid the bulk of the bill directly to the physicians, leaving only an uncovered balance of $160.80. As a *259 result of the conference, plaintiff agreed to pay that difference and a written stipulation of settlement was then executed by plaintiff and Ellison and witnessed by the law clerk. It provided, in relevant portion, that:
It is hereby stipulated and agreed by and between the parties that the above captioned matter is settled on the following terms: Defendant agrees to pay $160.80 to settle this case.
The stipulation bears the further notation "Received in Full" accompanied by Ellison's initials. No releases were apparently proffered or executed, nothing was placed on the record in open court, there was no direct judicial intervention at any point, and no lawyer for either party appeared or was consulted.
Some four months later, plaintiff, increasingly unhappy with the consequences of his surgery, consulted his present attorneys, who then sought an expert opinion on the question of whether those consequences were attributable to malpractice by Drs. Peyser and Carter in performing the surgery. Receiving an affirmative expert's report in December 1988, they commenced this action in early January 1989, several weeks prior to the expiration of two years from the date of the surgery. Defendants then moved for summary judgment relying on the entire controversy doctrine as codified by R. 4:30A and contending that the disposition of the Special Civil Part collection case without plaintiff having counterclaimed therein on his malpractice action barred the later institution of this action.
In considering the motion, the trial judge focused on the issue, explored by defendants in deposing plaintiff, of whether plaintiff knew or was chargeable with knowledge of his malpractice claim prior to the settlement of the collection case. Because plaintiff had admitted on his deposition that he had by then already suspected that defendants had "done something wrong" and was disinclined for that reason to pay the uncovered balance of their bill, the trial judge concluded that plaintiff had sufficient knowledge of his malpractice cause to require *260 him to raise it in the collection case on pain of preclusion under the entire controversy doctrine.
The reason for the judge's focus on plaintiff's knowledge is plain. Clearly, whatever else the preclusionary scope of the entire controversy doctrine may be, it is well settled that it does not bar transactionally related claims of which a party was unaware during the pendency of the prior litigation. See Mauro v. Raymark Industries, Inc., 116 N.J. 126, 135-136, 561 A.2d 257 (1989); Ayers v. Jackson Tp., 106 N.J. 557, 583, 525 A.2d 287 (1987); Zaromb v. Borucka, 166 N.J. Super. 22, 27, 398 A.2d 1308 (App.Div. 1979); Devlin v. Johns-Manville Corp., 202 N.J. Super. 556, 569, 495 A.2d 495 (Law Div. 1985). And cf. Brown v. Brown, 208 N.J. Super. 372, 506 A.2d 29 (App.Div. 1986) (the entire controversy doctrine ordinarily bars claims arising during the course of litigation if not therein reserved). The court did not, however, deal appropriately with that issue. The knowledge of the existence of a cause of action which will invoke the entire controversy doctrine is the same as the knowledge which will trigger the running of the statute of limitations in those cases to which the discovery rule of deferred accrual is applicable. See Mauro and Ayers, supra. The record before the trial judge was at least ambiguous as to whether plaintiff had such knowledge when he settled the collection case for $160.80. Certainly his admission that he sensed something was wrong with his treatment hardly indicates requisite knowledge, and he did not in fact consult an attorney until some months following the settlement. See, e.g., Graves v. Church & Dwight Co., Inc., 115 N.J. 256, 558 A.2d 463 (1989); Abboud v. Viscomi, 111 N.J. 56, 543 A.2d 29 (1988); Lynch v. Rubacky, 85 N.J. 65, 424 A.2d 1169 (1981). Consequently an evidential Lopez[1] hearing would in any event have been required for resolution of the knowledge question. We are persuaded, however, that that question need not be resolved *261 since we conclude that even if plaintiff then had knowledge of the existence of his malpractice claim, his settlement of the collection case did not bar its later prosecution.
The joinder requirements of the entire controversy doctrine are designed to achieve economy in litigation by avoiding the waste, inefficiency, delay and expense of piecemeal and fragmented litigation. Cogdell v. Hospital Center at Orange, 116 N.J. 7, 15, 560 A.2d 1169 (1989); Brown v. Brown, supra, 208 N.J. Super. at 377-378, 506 A.2d 29. The doctrine is equitable in nature and is fundamentally predicated upon "judicial fairness and will be invoked in that spirit." Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 343, 476 A.2d 250 (1984), quoted with approval by Cogdell, supra, at 27, 560 A.2d 1169. Thus, as in the case of all other preclusionary doctrines, its application requires, as a matter of first principle, that the party whose claim is being sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original action. See, e.g., Thornton v. Potamkin Chevrolet, 94 N.J. 1, 462 A.2d 133 (1983); Reardon v. Allen, 88 N.J. Super. 560, 564, 213 A.2d 26 (Law Div. 1965). And see generally the exceptions to application of both res judicata and collateral estoppel enumerated in Restatement (Second) of Judgments § 28 at 273 (1982), which are, in large part, based on that first principle. See also § 29 of the Restatement, resting issue preclusion in subsequent litigation with others on the "full and fair opportunity to litigate the issue in the first action...." This first principle was clearly not met here.
As we have pointed out, the first action here was a Special Civil Part collection case involving, in the end, a $160.80 controversy. Not only did plaintiff appear pro se, but the professional association itself, which was seeking payment of its bill, did not deem the matter of sufficient importance to warrant the presence of its attorney. No judge was involved in the proceeding, which was in effect an informal expedited mediation appropriate to small claims but hardly to significant tort litigation. Nor is there anything in the record to suggest that plaintiff had *262 or should have had the remotest notion that by paying the uncovered $160.80 he would be giving up a substantial tort claim or that the physicians had or should have had the remotest notion that, by accepting the $160.80, they were obtaining protection against the later assertion of that claim against them.
The Restatement, § 28, subsection (3), instructs that even where an issue has been actually litigated and res judicata effect would otherwise normally attach to the final judgment, that judgment will not bar relitigation of a determined issue if:
A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them.... [Id. at 273]
Comment (d) further explains that "there may be compelling reasons" to deny issue preclusion in one court in respect of the judgment of an "inferior" court, citing, as an example, that "the proceedings available in the first court may have been tailored to the prompt, inexpensive determination of small claims and thus may be wholly inappropriate to the determination of the same issues when presented in the context of a much larger claim." Id. at 279. If res judicata and collateral estoppel principles, which are predicated upon actual issue litigation, are inapplicable in such circumstances, then, a fortiori, the entire controversy doctrine, predicated on litigation which could have, but did not take place, is inapplicable.
In sum, the problems inherent in an inequality of forum, which concerned the Court in Thornton, supra, are at the heart of the matter here as well. The ability of the judicial system to cope effectively with the volume of minor commercial litigation with which it must deal is advanced by the informality of mediation-type proceedings in which pro se litigants are able quickly, inexpensively, expeditiously, and with minimum resort to legal counsel and judicial intervention, to resolve specifically stated and narrowly defined small claims, whether or not instituted in the small claims division. These proceedings were never intended to have preclusionary consequences beyond *263 their own scope. It is not only unfair that they should do so, but if they do, the legitimacy of small claims processing will be seriously undermined. It would obviously be counterproductive in the extreme were a preclusionary rule enforced in such a way as to penalize, without any concomitant benefit to the parties or to the system, a pro se litigant's participation in the small claims mediation process or other expedited processing mechanism. Such enforcement would convert the entire controversy doctrine from an equitable device into a trap for the unsuspecting. That is not its function.
There are several other matters requiring our attention. First, plaintiff argues for the first time on appeal that the entire controversy doctrine should not have been applied by the trial court because the parties are different, that is, it was the professional association which was the litigant in the Special Civil Part, whereas it is the physicians individually he is suing in the Law Division. Since his Law Division action preceded the prospective ruling in Cogdell, he argues that he is entitled to the benefit of the pre-Cogdell limitation of the doctrine to claims only. Although the contention has apparent merit, we need not decide it. See R. 2:6-2(a)(1).
Finally, we are constrained to address defendants' motion papers submitted on the summary judgment application. First, the certification in support thereof was not that of either defendant but rather of their attorney, which stated that:
A settlement conference was held on 4/15/88 in District Court. At the conference, plaintiffs asserted that the defendants herein were negligent in performing varicose vein surgery and were not entitled to payment. The District Court matter was settled for $160.80 and approved by the court.
Moreover, defendants' brief in support of the motion stated that:
... Mr. Cafferata, a representative of Dr. Peyser and Dr. Carter and Judge Cramp's law secretary signed a Stipulation of Settlement agreeing on the above terms thus disposing of all claims both parties asserted relative to the surgery.
Both of these statements are objectionable. The first is gross hearsay and a clear violation of R. 1:6-6. Moreover, it is *264 inaccurate. There is absolutely nothing in the record to suggest that the settlement was "approved by the court." Law clerk mediation and subsequent witnessing of a stipulation of dismissal are a far cry from court approval.
The second quoted statement is misleading. The stipulation of dismissal did not "dispos[e] of all claims both parties asserted relative to the surgery." Its specific recitation was only that the claim raised in the Special Civil Part action was being settled. The stipulation did not constitute, either expressly, implicitly or by operation of law, a release of all claims which typically accompanies private settlement and which defendants, as we have noted, never proffered or requested here.
These irregularities in counsel's papers went to the essence of defendants' preclusionary defense and obfuscated the merits of the issue in the trial court. They were altogether improper and should have been stricken.
The summary judgment dismissing the complaint on preclusionary grounds is reversed and we remand to the Law Division for further proceedings.
NOTES
[1] Lopez v. Swyer, 62 N.J. 267, 300 A.2d 563 (1973).