993 F.2d 27
 Peter PETROCELLI and Phyllis Petrocelli, his wife Appellants,
v.
DANIEL WOODHEAD CO., a subsidiary of Woodhead Industries,
Inc.; XYZ Corporation (a fictitious name for the
manufacturer of the product); ABC Corporation (a fictitious
name for the distributor of the product), Appellees.
 No. 92-5305.
 United States Court of Appeals, Third Circuit.
 Argued Jan. 28, 1993.
Decided May 13, 1993.
 
 Alan L. Zegas (argued), West Orange, NJ, for appellants.
 Collier, Jacob & Mills, P.C., Somerset, NJ (Richard F. Collier, Jr., Alan G. Lesnewich, (argued), on the brief), for appellees.
 Before: BECKER and ALITO, Circuit Judges and ATKINS, District Judge.*
 OPINION OF THE COURT
 ALITO, Circuit Judge:
 
 
 1
 This is an appeal from a district court decision granting summary judgment against Peter and Phyllis Petrocelli, the plaintiffs in a products liability action. Because Peter Petrocelli had been a defendant in an earlier case arising from the same incident, the district court held that the products liability action was barred by New Jersey's entire controversy doctrine. We hold that the district court properly applied this doctrine, and we therefore affirm.I.
 
 
 2
 This case arises out of a fire that occurred in 1989 at a gas station in New Jersey. The fire damaged the premises and allegedly injured Peter Petrocelli. Petrocelli asserts that he was changing the oil in his car in a work bay on the premises, that he accidently dropped the electric light that he was using, and that oil on the floor of the garage caught fire.
 
 
 3
 After the fire, the gas station owner filed a property damage claim with his insurer, the Insurance Company of North America ("INA"). After paying $14,427.65 to satisfy this claim, INA filed a subrogation action against Petrocelli in state Superior Court. INA alleged that Petrocelli caused the fire by negligently dropping the electric light. Petrocelli retained counsel, who then requested that Petrocelli's homeowner and automobile insurers defend him in the INA suit. While waiting for responses from the insurers, Petrocelli's counsel drafted an answer to the INA complaint. The draft answer included defenses based on the alleged intervening action or liability of unidentified third parties.
 
 
 4
 On January 22, 1991, Petrocelli's counsel filed a separate complaint in the same court against the Daniel Woodhead Company ("Woodhead"), the manufacturer of the electric light, alleging that the fire was caused by the light's defective design. Petrocelli's wife, Phyllis Petrocelli, also joined the complaint, asserting a derivative claim for loss of consortium. Under New Jersey Court Rule 4:5-1, complainants must certify whether the matter in controversy is the subject of any other action or contemplated action in any court and whether they are aware of any other party that should be joined to the action. Even though he was defending the INA suit arising out of the same controversy, Petrocelli's counsel certified that there were no such actions.
 
 
 5
 On January 29, 1991, Petrocelli's automobile insurer, Great American Insurance Company ("Great American"), agreed to assume Petrocelli's defense in the INA suit. Petrocelli's counsel sent Great American his draft answer but did not inform it of his suit against Woodhead. Great American then proceeded to negotiate with INA, and settlement was reached before an answer was filed. A subrogation release was executed, and in April 1991 the INA suit was dismissed with prejudice.
 
 
 6
 In the meantime, on February 27, 1991, Woodhead, a Delaware corporation with its principal place of business in Illinois, removed the Petrocellis' products liability action to federal court on the basis of diversity of citizenship. During discovery in early 1992, Woodhead found out about the previous INA suit and notified the Petrocellis of its intent to seek summary judgment on the basis of the entire controversy doctrine. The motion was filed and, after oral argument, granted by the district court. The Petrocellis then filed this appeal.
 
 II.
 
 7
 Our responsibility in this case is to determine whether the district court properly applied New Jersey's entire controversy doctrine.[1] This doctrine holds that "the adjudication of a legal controversy should occur in one litigation in only one court" and that "accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." Cogdell v. Hospital Center, 116 N.J. 7, 560 A.2d 1169, 1172 (1989). The doctrine is such a "fundamental aspect of judicial administration" in New Jersey that it was recognized in the 1947 state constitution. N.J. Const. art. 6, § 3, p 4. See Cogdell, 560 A.2d at 1172-73. "The purposes of the doctrine include the needs of economy and the avoidance of waste, efficiency and the reduction of delay, fairness to parties, and the need for complete and final disposition through the avoidance of 'piecemeal decisions.' " Id. at 1173 (quoting 2 State of New Jersey Constitutional Convention of 1947, Committee on the Judiciary Report § III, at 1187 (1947)).
 
 
 8
 Over the years, the doctrine has evolved to encompass a wider and wider array of claims. Most recently, the Supreme Court of New Jersey held that the entire controversy doctrine "embraces not only joinder of related claims between the parties but also joinder of all persons who have a material interest in the controversy." Id. at 1178. In addition, New Jersey Court Rule 4:30A now provides:
 
 
 9
 [n]on-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine.
 
 
 10
 Last year, in Kozyra v. Allen, 973 F.2d 1110 (3d Cir.1992), we applied the entire controversy doctrine in a case quite similar to the one now before us. In Kozyra, a tractor trailer collided with the rear of a car that then veered into the next lane and struck a second car. The driver of the first car sued all the other parties. The driver of the second car, Geraldine Della Buono, forwarded her summons to her insurer. Pursuant to its contractual obligations, the insurer defended the suit, which proceeded to arbitration and resulted in a verdict for no cause of action. Della Buono did not assert, as she might have under the New Jersey rules, a personal injury claim. Della Buono was then voluntarily dismissed from the case. She later attempted to bring a suit for personal injuries against the driver and owner of the tractor trailer, but we held that this action was barred by the entire controversy doctrine.
 
 
 11
 In reaching this result, we observed that the New Jersey Supreme Court recognized no exceptions to this broad and preclusive doctrine except in those instances involving " 'an inequality of forum,' " i.e., those instances in which the first proceeding occurred before a lesser tribunal. Id. at 1113 (quoting Cafferata v. Peyser, 251 N.J.Super. 256, 597 A.2d 1101, 1104 (App.Div.1991)). See also, e.g., Jersey City Police Officers Benevolent Ass'n v. City of Jersey City, 257 N.J.Super. 6, 607 A.2d 1314, 1318-19 (App.Div.1992). We found this exception inapplicable because "[t]he state court, as the initial forum, was capable of adjudicating any claim the parties may have had...." Kozyra, 973 F.2d at 1113.
 
 
 12
 In addition, we rejected the argument, based on Cafferata v. Peyser, supra, and related cases, that Della Buono did not have a fair opportunity to assert her personal injury claim in the prior action because the counsel assigned by the insurance carrier to represent her in that action never spoke with her or advised her of her rights concerning her personal injury claim. Id. at 1113. We found it sufficient that Della Buono knew that she was a defendant in the first action and that she knew or reasonably should have known at that time of her injuries. Id. We also found "limited precedential value" in Humble Oil & Refining Co. v. Church, 100 N.J.Super. 495, 242 A.2d 652 (App.Div.1968), which held that the settlement by a party's insurer of a wrongful death action against the party did not preclude the party from subsequently asserting related property damage claims against third parties. We reasoned that Humble Oil had been undermined by subsequent changes in New Jersey law concerning mandatory joinder of claims.
 
 
 13
 Finally, the Kozyra majority did not agree with the argument in dissent that the New Jersey Supreme Court would carve out an exception to the entire controversy doctrine because its application in that case would be "incompatible with the spirit of judicial fairness in which the New Jersey courts have repeatedly stressed the doctrine should be invoked...." Id. at 1118 (Sloviter, C.J., dissenting).
 
 
 14
 The decision in Kozyra has not been undermined by any subsequent decisions of the New Jersey Supreme Court. It is therefore binding on this panel, and we cannot reasonably distinguish it from the present case. Indeed, most of the arguments advanced by Petrocelli are remarkably similar to those rejected in Kozyra. For example, Petrocelli, citing Humble Oil and related cases, apparently argues that subrogated property actions need not be joined with actions for personal injuries under New Jersey law. We read Kozyra, however, as squarely rejecting this contention. Similarly, Petrocelli, citing Cafferata and similar cases, contends that he did not have a fair opportunity to raise his products liability claim in the first action.[2] In fact, however, Petrocelli had at least as good an opportunity as Della Buono did in Kozyra. There is no question that Petrocelli was aware of the INA suit against him and the injuries he allegedly sustained in the fire. Moreover, Petrocelli had the benefit of private counsel who was involved in defending the INA suit from its beginning and, indeed, filed the separate complaint against Woodhead before Great American agreed to assume Petrocelli's defense. Moreover, that complaint, as previously noted, contained no acknowledgment of the existence of other claims and parties involved in the controversy, as required by New Jersey Court Rule 4:5-1. It is true that once Great American took over the defense of the INA suit Petrocelli was never informed of nor consulted regarding the subrogation settlement, but we do not think that these facts are sufficient to distinguish the present case from Kozyra.
 
 
 15
 Petrocelli suggests that Kozyra should not govern our decision because only claims, and not parties, had been omitted in the first suit in that case. The Supreme Court of New Jersey, however, now equates the failure to join parties with the failure to join claims. In Cogdell the court wrote:
 
 
 16
 [W]e now hold that to the extent possible courts must determine an entire controversy in a single judicial proceeding and that such a determination necessarily embraces not only joinder of related claims between the parties but also joinder of all persons who have a material interest in the controversy.
 
 
 17
 Cogdell, 560 A.2d at 1178.
 
 
 18
 The court stated that the purposes behind the mandatory joinder of claims applied with equal force to the joinder of parties. The court specifically noted that fairness requires all allegedly liable parties to be joined in a single action. Id. at 1177. Referring to the case before it, the court noted that "there can be little doubt that the participation of all potentially responsible persons as parties in the original action would have resulted in a fuller and fairer presentation of the relevant evidence and would have enabled the jury to make a more informed and complete determination of liability." Id. at 1178.[3] In this way, the court stated, judicial resources can be devoted to determinations that are "comprehensive, just and conclusive as to all persons implicated in the controversy." Id.
 
 
 19
 Finally, Petrocelli relies upon the same sort of general equitable arguments that the Kozyra majority rejected, but in light of Kozyra those arguments now have little force.
 
 
 20
 In sum, because Petrocelli did not join Woodhead in the INA suit, as required by the entire controversy doctrine, he is now precluded from raising his personal injury claims. His wife's loss of consortium claim, which derived from her husband's underlying claims and was not a separate cause of action itself, was therefore also correctly dismissed. See Rex v. Hutner, 26 N.J. 489, 140 A.2d 753, 754 (1958); Tichenor v. Santillo, 218 N.J.Super. 165, 527 A.2d 78, 82 (App.Div.1987).[4]
 
 III.
 
 21
 The Petrocellis argue that it would be an onerous burden to litigate all of the claims arising out of the gas station explosion in one proceeding. This argument, however, runs counter to the entire controversy doctrine, as the Supreme Court of New Jersey has developed it. As that court has noted:'The entire controversy doctrine does not demand monolithic adjudications. Any possible unfairness to litigants, confusion in the presentation of issues, administrative unmanageability, or distortion in the truth-determining process that may result from compulsory joinder of parties--or claims--can be eliminated or at least minimized by a trial court possessed of the discretion to excuse joinder or to order severance.'
 
 
 22
 Cogdell, 560 A.2d at 1179 (quoting Crispin v. Volkswagenwerk A.G., 96 N.J. 336, 476 A.2d 250, 260 (1984) (Handler, J., concurring)). Thus, the entire controversy doctrine does not require that all claims and parties proceed to culmination in one litigation. Rather, all claims and parties must initially be joined together before one court. The court can determine for itself how best to proceed with the various claims and parties. In order to exercise this discretion, however, the court must be fully informed of the extent of the controversy before it. The Petrocellis argue that equitable considerations justify their counsel's unilateral decision to ignore the INA suit once Great American assumed Petrocelli's defense. Under the entire controversy doctrine, however, courts and not private parties have the authority to decide whether equitable considerations justify separate trials.
 
 
 23
 The Petrocellis further argue that obligating an insured to bring all of his or her claims in an initial suit against the insurer will cause dire consequences for insureds and insurers in New Jersey. The Petrocellis maintain that insurance companies will now be required to pay the costs of litigating all of their insureds' third-party claims and that insurance premiums will skyrocket because of the imposition of this additional burden. This argument does not persuade us to reverse the district court's decision.
 
 
 24
 Our decision, while addressing the obligation of a party in Petrocelli's position to assert third-party claims, says nothing about an insurer's obligation to represent or pay for the representation of such a party with respect to such claims. The latter is a separate question that is not before us. It may well be that an insurer such as Petrocelli's could satisfy its defense obligations by advising its insured to assert any claims based upon the same controversy and to retain separate counsel to prosecute any such claims. We express no view on this question, which is not before us and which involves issues of state law that are best resolved by the New Jersey courts.
 
 
 25
 We are not unsympathetic to the plaintiff's lament. It does not seem efficient or particularly fair to require a person asserting a personal injury claim based on negligence or products liability to piggyback the claim on top of a property damage subrogation suit by one insurance company against another simply because the insurance company managed to get to the courthouse first. However, the decisions of the New Jersey Supreme Court and our decision in Kozyra seem to have gone this far, and we have no choice but to follow.
 
 
 26
 In sum, we hold that the district court correctly granted Woodhead's motion for summary judgment on the basis of the entire controversy doctrine. The order of the district court will therefore be affirmed.
 
 
 
 *
 The Honorable C. Clyde Atkins, Senior Judge of the United States District Court for the Southern District of Florida, sitting by designation
 
 
 [1]
 Even though Woodhead did not affirmatively plead the entire controversy defense as required by Federal Rule of Civil Procedure 8(c), the defense was raised in a timely fashion under Rule 15(b) and is therefore properly before us. See O'Shea v. Amoco Oil Co., 886 F.2d 584, 591 n. 6 (3d Cir.1989)
 
 
 [2]
 As noted, the exception to the entire controversy doctrine recognized in Cafferata applies to cases involving "an inequality of forum." Cafferata, 597 A.2d at 1104. Here, both the INA and Woodhead suits were filed in the Middlesex County Superior Court. Thus the exception is plainly inapplicable
 
 
 [3]
 It makes no difference that the INA suit itself did not proceed to trial as it is the opportunity to litigate that triggers the application of the entire controversy doctrine. If only a trial could trigger the application of the entire controversy doctrine, the goal of determining liability in one proceeding would effectively be eviscerated and potentially conflicting determinations of responsibility would result
 
 
 [4]
 It is therefore unnecessary to determine if the joinder of Phyllis Petrocelli to the INA suit was also required under New Jersey's mandatory party joinder rule and if failure to do so thereby barred that claim from the Woodhead suit under the entire controversy doctrine