

1998 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-13-1998

# Fornarotto v. Amer Waterworks Co

Precedential or Non-Precedential:

Docket 97-5332

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1998

Recommended Citation

"Fornarotto v. Amer Waterworks Co" (1998). *1998 Decisions.* Paper 110.
http://digitalcommons.law.villanova.edu/thirdcircuit_1998/110

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1998 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 13, 1998

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-5332

JOSEPH FORNAROTTO,
         Appellant

v.

AMERICAN WATERWORKS COMPANY, INC.;
NEW JERSEY-AMERICAN WATER COMPANY-
EASTERN DIVISION

On Appeal from the United States District Court
for the District of New Jersey
Civil Action No. 95-cv-05555

Argued: February 12, 1998

Before: GREENBERG, NYGAARD and McKEE,
Circuit Judges

(Opinion Filed: May 13, 1998)

          JOSEPH L. GIJANTO, ESQ. (Argued)
          Schibell & Mennie, L.L.C.
          1806 Highway 35 South
          P.O. Box 2237
          Ocean, New Jersey 07712
          Attorneys for Appellant

        EZRA D. ROSENBERG, ESQ.
        ROBERT D. RHOAD, ESQ. (Argued)
        Dechert, Price & Rhoads
        Princeton Pike Corporate Center
        P.O. Box 5218
        Princeton, New Jersey 08543-5218
        Attorneys for Appellees

OPINION OF THE COURT

McKee, Circuit Judge.

Joseph Fornarotto appeals from the district court's grant of summary judgment in favor of his employer, New Jersey-American Water Company. The district court ruled that this suit under ERISA was barred under New Jersey's entire controversy doctrine because Fornarotto's previously filed tort action was sufficiently related to the instant action to trigger application of that doctrine. For the reasons that follow we will reverse and remand for further proceedings consistent with this opinion.

I.

Fornarotto was employed by the New Jersey-American Water Company (a subsidiary of American Waterworks Company, Inc.) for nearly 30 years, from March 7, 1966 until January 23, 1995. As a New Jersey-American employee, Fornarotto was eligible to participate in the company's pension plan which provided different levels of benefits to eligible employees, depending upon the circumstances under which they stopped working for the company. Those benefits include disability retirement benefits, if, inter alia, the employee becomes disabled and is "unable permanently to engage in any occupation or employment for compensation or profit." App. at 24.

On April 8, 1990, Fornarotto's union was on strike. He was walking a picket line when he was struck by an automobile driven by Michael Chiapetta, who was also a New Jersey-American employee.1 Fornarotto was

_____

1. Fornarotto claimed that Chiapetta was acting in the course of his employment at the time of the accident.

2

hospitalized for approximately 10 days in cervical and lumbar traction. After his discharge, he underwent a course of physical therapy for his neck, back and knee. In June of 1990, he underwent arthroscopic surgery on his knee, and began a new course of physical therapy.

On June 11, 1990, Fornarotto filed a personal injury action against Chiapetta, and New Jersey-American, in the Superior Court of New Jersey, Law Division, Monmouth County. Fornarotto v. Chiapetta and New Jersey-American Waterworks, Co., No. MON-L-54564-90. Thereafter, Fornarotto returned to work at New Jersey-American. However, he soon experienced additional problems with his knee, and began experiencing severe headaches. In March of 1992, he had a second arthroscopic surgery on his knee and was continuing to suffer severe headaches that first began after the accident. Fornarotto continued with physical therapy until May of 1992 when he was admitted to the hospital and again put in traction. He was released after about a week, but his rehabilitation did not go well, and he eventually needed back surgery. His physical problems persisted even after that surgery, and as a result of the lingering effects of his injuries, he had problems concentrating, sitting, standing, lifting or bending, and was unable to engage in any activity for more than a short period of time. He applied for disability benefits under his employer's benefits plan, but his requests for disability benefits were denied, and his final appeal from that decision was rejected on May 8, 1995. Fornarotto has not worked since January 23, 1993, and claims that he has been totally disabled since then.

On September 5, 1995, Fornarotto filed a complaint in the Superior Court of New Jersey, Law Division, Monmouth County, against American Waterworks and New Jersey-American Waterworks under the civil enforcement provisions of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. S 1132(a)(1)(B), seeking disability benefits by reason of being disabled by the injuries he sustained in the automobile accident.2  On October 27,

_____

2. State courts have concurrent jurisdiction with federal courts for actions by an ERISA participant under 29 U.S.C.S 1132(a)(1)(B). 29 U.S.C. S 1132(e)(1).

3

1995, the defendants removed the ERISA action to federal district court in New Jersey. In November of 1996, Fornarotto's state court personal injury action was settled for $450,000, and a Stipulation of Dismissal with Prejudice was filed. Shortly thereafter, on February 7, 1997, defendants filed a motion for summary judgment in Fornarotto's removed ERISA action. They alleged that the ERISA action arose from the same set of facts as Fornarotto's personal injury action and was therefore barred by New Jersey's entire controversy doctrine. The district court agreed and granted defendants' summary judgment motion. This appeal followed.[3]

II.

The "entire controversy doctrine seeks to assure that all aspects of a legal dispute occur in a single lawsuit." Olds v. Donnelly, 696 A.2d 633, 637 (N.J. 1997). Although res judicata principles and New Jersey's entire controversy doctrine are "blood relatives," the latter is New Jersey's "specific, and idiosyncratic, application of traditional res judicata principles." Rycoline Products, Inc. v. C & W Unlimited, 109 F.3d 883, 886 (3d Cir. 1997). The doctrine encompasses traditional concepts of claims joinder as well as party joinder, Olds v. Donnelly, 696 A.2d at 637, though cases involving the latter predominate.

> The fundamental principle behind the inclusion policy of the entire controversy doctrine is that the adjudication of a legal controversy should occur in one litigation in one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.

Venuto v Witco Corp., 117 F.3d 754, 761 (3rd Cir. 1997).

"The objectives behind the doctrine are threefold: (1) to encourage the comprehensive and conclusive determination of a legal controversy; (2) to achieve party fairness . . . and

---

3. We subject the district court's grant of summary judgment to the defendants to plenary review. Turner v. Schering-Plough Corp., 901 F.3d 335, 340 (3d Cir. 1990).

4

(3) to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation." Id. The doctrine is a "basic concept of judicial administration that is of constitutional dimension," viz., N.J. Const. (1947), art. IV, S 3, P 4.4 DiTrolio v. Antiles, 662 A.2d 494, 502 (N.J. 1995).

The rule evolved from common law concerns of joinder, and efficiency, but has since been codified and finds its current expression in Rule 4:30A of the New Jersey Rules of Civil Procedure, which provides:

> Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or cross-claims in summary actions).5

However, as is true with the infamous "rule against perpetuities", the entire controversy doctrine is easily recited, but often deceptively elusive and problematic in application.6 This is because it is often difficult to define the parameters of "a legal controversy" or "one litigation" with the precision suggested by the doctrine.

_____

4. The constitutional provision reads:

> Subject to the rules of the Supreme Court, the Law Division and the Chancery Division shall each exercise the powers and functions of the other division when the ends of justice so require, and legal
and
> equitable relief should be granted in any cause so that all matters in controversy between the parties may be completely determined.

5. For a discussion of the origins and evolution of the doctrine see Olds, 696 A.2d at 636 et seq.

6. The Rule Against Perpetuities was given its classic expression by John Chipman Gray and reads: "No interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." GRAY, THE RULE AGAINST PERPETUITIES S 201 (2d ed. 1906). One commentator has said that as law students "we struggle with it and make a little headway." John W. Weaver, Fear and Loathing in Perpetuities, 48 Wash. & Lee L. Rev. 1393 (1991). However, it is only later that we realize that "[n]ot only does no one understand the Rule, no one's really expected to." Id.

5

In determining whether successive claims constitute one controversy for purposes of the [entire controversy] doctrine, the central question is whether the claims against the different parties arise from related facts or the same transaction or series of transactions. It is the core set of facts that provides the link between distinct claims against the same or different parties and triggers the requirement that they be determined in one proceeding. One measure of whether distinct claims are part of an entire controversy is whether parties have a significant interest in the disposition of a particular claim, one that may materially affect or be materially affected by the disposition of that claim. The test for whether claims are "related" such that they must be brought in a single action under the New Jersey entire controversy doctrine . . . [is] as follows: if parties or persons will, after final judgment is entered, be likely to have to engage in additional litigation to conclusively dispose of their respective bundles of rights and liabilities that derive from a single transaction or related series of transactions, the omitted components of the dispute or controversy must be regarded as constituting an element of one mandatory unit of litigation.

DiTrolio v. Antiles, 662 A.2d at 501 (citations and internal quotations omitted). However, the current appeal illustrates the difficulty that courts can encounter when attempting to determine when the "relationship" of the "core facts" implicates the doctrine, or when successive law suits constitute "a single transaction or series of transactions." For although Fornarotto's tort claim and his ERISA claim share the common fact of his injuries, the relationship of the parties and successive claims is such that we conclude that those suits do not constitute "a single transaction". This action is therefore not barred by the entire controversy doctrine.

An examination of the facts in DiTrolio v. Antiles is instructive. There, a physician, DiTrolio, was denied staff privileges at a hospital, and he sued the hospital and its board of trustees challenging the procedures used to deny him a position on the hospital's staff. The gravamen of that

suit was that the four physicians who comprised the urology department, who were all in competition with him, had improperly caused the hospital to deny his application. A mere six days after DiTrolio entered into the settlement agreement that ended that litigation, he brought a second action against those four physicians whose conduct had formed the basis of his suit against the hospital. The trial court granted the defendants' motion to dismiss the second suit under the entire controversy doctrine for failure to join them in the first action. The New Jersey Supreme Court agreed. The court concluded that the fatal flaw in the second suit was plaintiff's failure to join the four physicians as parties in the first action. Id. at 508.

Here, we are concerned with Fornarotto's failure to join claims, not parties, but that distinction does not alter the substance of our analysis. In DiTrolio, the court stated that the "determinative consideration is whether the distinct claims are aspects of a single larger controversy because they arise from interrelated facts. . . . [T]he same set of facts can give rise to discrete causes of action and different kinds of relief." 662 A.2d at 503. The court focused on the circumstances underlying the second suit.

> [A] controversy between or among persons that arises from a core set of related factual circumstances may trigger different claims against different parties. It is this commonality of facts, rather than commonality of issues, parties or remedies that defines the scope of the controversy and implicates the joinder requirements of the entire controversy doctrine.

Id. (emphasis added). Here, absent the injuries that gave rise to Fornarotto's tort claim, he would not have become disabled and sought the disability benefits he sued for in this ERISA proceeding. Nevertheless, this similarity does not rise to the level of "commonality of facts" necessary to trigger the entire controversy doctrine. See Joel v. Morocco, 680 A.2d 1036 (N.J., 1997).

In Joel, the court stated the issue as follows: "The essential question is whether a party making a judicial challenge to zoning approvals granted to a partnership must name in that land-use suit the individual partners in

7

the partnership as a precondition to later enforcement of a money settlement against the partners." Id. The court then discussed recent cases and concluded that the doctrine did not require joinder under those circumstances. "The assertion of the personal claims against the partners was not at all necessary to the `comprehensive and conclusive' determination of the underlying legal controversy in the land-use case." Id. at 1039. Therefore, failure to include the individual partners in the settlement agreement with the partnership did not preclude the plaintiff from suing those partners individually after the first action was settled. That is our situation here. "There were two separate actions, not two causes of action arising from the same transactional facts." Id. at 1040. The liability of the partners in Joel v. Morrocco was governed by the Uniform Partnership law, not the law of land use that governed resolution of the zoning dispute. The second suit was therefore unlike cases where a subsequent suit "would have necessitated a rerun of the first case to determine [liability in the second suit]" Id. at 1037. The entire controversy doctrine "is easily recognized in the context of the calculated fragmentation of litigation." Id. Here, there is no such fragmentation.

Fornarotto's personal injury action was grounded in traditional negligence, thus issues of fault, duty, causation, agency, and contributory negligence controlled. None of those issues is relevant to his ERISA action. The issues here involve an employer's obligation to pay disability compensation under the provisions of a pension plan. Even if the employer and Chiapetta, the driver of the car that struck Fornarotto, both prevailed in the state court tort action, the defendant-employer would be no better off here so long as Fornarotto could establish he was "disabled" under defendant's plan.[7] Accordingly, we conclude that the link between this action and the prior action is too attenuated to hold that both actions arise from a

_____

7. New Jersey-American argues that Fornarotto will receive the "windfall" of a double recovery if he is allowed to collect on his ERISA claim and retain the previously bargained-for settlement proceeds. However, the district court can address that concern if Fornarotto prevails on remand. That court can then consider this argument and resolve it in context with the employer's obligation under its pension plan.

8

"commonality of facts." The relationship of the two suits is rooted more in serendipity and coincidence than commonality of facts. Fornarotto's ERISA claim does not "constitute one or more of the bundle of rights and liabilities which derive from the . . . tortfeasor-injured person relationship of plaintiff and defendant which should be disposed of in one unit of litigation." Chiacchio v. Chiacchio, 486 A.2d 335, 338, (N.J. Super. A.D. 1984)

Fornorotto's first suit and his second suit do not turn on the "same transactional facts." Joel, 688 A.2d at 1037. Accordingly, we hold that the entire controversy doctrine was not implicated by the failure to join the ERISA claim with the prior tort claim. The two claims are separate and distinct, and failure to join them does not require a "rerun" of the preceding state litigation nor does this suit allow Fornarotto to "seek two bites at the apple." Joel, at 1040.

III.

Fornarotto concedes that his personal injury action and his ERISA action arise from the same set of facts, i.e., his automobile accident. In Illiano v. Seaview Orthopedics, 690 A.2d 662 (N.J. Super. A.D. 1997), Illiano suffered back injuries when his car was struck by a car driven by Gilbert. Apparently, Gilbert's negligence was not at issue and only damages were contested. Illiano was treated for the injury by Dr. Lospinuso, a principal of Seaview Orthopedics.[8] Eventually, Illiano's counsel filed a personal injury action against Gilbert. However, for some unknown reason, Lospinuso repeatedly and erroneously reported, as part of Illiano's medical history, that Illiano's back injury was either work-related or related to a car accident that occurred later than the Gilbert accident.

Lospinuso refused to correct his report in spite of several requests by Illiano's counsel to do so. Not unexpectedly, Lospinuso's erroneous reports "were devastating to [Illiano's] pending action against Gilbert," Id. at 664, and Illiano was forced to accept an unfavorable settlement.

_____

8. Ironically, Lospinuso is also one of Fornarotto's treating physicians. See App. at p. 36.

9

In the meantime, Illiano's automobile insurance carrier refused to pay Lospinuso's bill because his medical reports did not relate Illiano's treatment to the Gilbert accident. Ultimately, after Lospinuso realized that his erroneous reports were the reason the carrier was not paying his bill, he reviewed his records and, in 1992, wrote a letter to Illiano and Illiano's insurance carrier correcting the error. However, the letter was too late to assist Illiano in his negligence action because he had already accepted the settlement.

Consequently, Illiano sued Lospinuso and Seaview Orthopedics, claiming that Lospinuso's refusal to correct his medical reports during the pendency of the Gilbert suit resulted in the loss of the true value of his claim against Gilbert. Lospinuso moved for summary judgment contending, inter alia, that the claim against him should have been joined to the Gilbert personal injury case and was therefore barred by the entire controversy doctrine. The trial court granted Lospinuso's motion, finding that the entire controversy doctrine did bar Illiano's suit against Lospinuso.

The New Jersey appellate court reversed, finding that the Lospinuso claim was "not a constituent component of the transaction giving rise to the claim against Gilbert." Id. at 666. The appellate court wrote:

> The subject of the . . . first suit here was a routine automobile accident personal-injury case. [Lospinuso] had nothing to do with giving rise to that cause of action. The claims made against [Lospinuso] by [Illiano] arising out of his conduct during the litigation had no causal nexus with [Illiano's] claim against [Gilbert]. In short, the Lospinuso claim, in our view, is simply not fairly characterizable as a constituent component of [Illiano's] claim against Gilbert. It is rather a separate and tangential controversy arising out of an altogether different relationship having its own set of responsibilities and obligations.

Id. (emphasis added).

The court further noted that when joinder has been required, it has been "because the claims against [the

10

defendants] in the successive actions were constituent claims arising out of the same transaction that was the gravamen of the first suit against others." Id. The transaction that gave rise to the second suit there was not the gravamen of the first suit. We believe the same rationale applies here. Although Fornarotto's automobile accident triggered both the personal injury claim and his disability pension claim, thus providing a "causal nexus," the personal injury action is not a constituent component of the ERISA action. The ERISA action "aris[es] out of an altogether different relationship having its own set of responsibilities and obligations," from the personal injury action. The doctrine does not require an identity of legal issues. Joel, at 1038. However, the issues in a successive suit must be such that the suit is a "consistent component" of the prior claim. Illiano, 690 A.2d at 666. That is not the case here, and we conclude the doctrine doesn't apply.

A similar result was reached in Chiacchio v. Chiacchio, 486 A.2d 335 (N.J. Super. A.D. 1984). There, plaintiff/wife filed a two-count complaint -- count one was in divorce on grounds of extreme cruelty and count two was in tort to recover damages for personal injuries as a result of being shot and strangled by defendant/husband. Husband notified his homeowner's carrier, which denied coverage. Husband then filed a motion to join the carrier as a third-party defendant. The motion was granted and the carrier was not only joined as a third-party defendant, but was also ordered to provide a defense in the underlying action and to pay for any judgment obtained by wife against husband to the extent of its coverage. The carrier then filed an answer to the third-party complaint and a counterclaim for a declaratory judgment as to the coverage issue. The carrier also moved to vacate the order. The trial court vacated its prior order except for the joinder of the carrier as a third-party defendant and further ordered that all issues raised by the complaint, third-party complaint and the declaratory judgment counterclaim should be joined in the pending action. Finally, the trial court granted the wife permission to file an amended complaint setting forth a claim for PIP benefits under an automobile policy issued by the same carrier.

11

The carrier filed an interlocutory appeal contending, inter alia, that the entire controversy doctrine did not require that the issues relating to coverage and PIP benefits be joined in the matrimonial-tort action. The appellate court agreed stating:

> The third-party complaint and [the carrier's] counterclaim do not involve common questions of fact or law with those raised in the complaint. Plaintiff seeks a dissolution of the marriage, equitable distribution of the marital assets and damages for injuries sustained as a result of the defendant's wrongdoing, whereas the amended complaint, third-party complaint and counterclaim present issues relating to the insurance coverage afforded by [the carrier's] policies. These claims do not have the commonality required for a joinder under [the rules relating to third-party practice]. Nor do they constitute one or more of the bundle of rights and liabilities which derive from the husband-wife or tortfeasor-injured person relationship of plaintiff and defendant which should be disposed of in one unit of litigation.

Id. at 7-8 (emphasis added). Just as Fornarotto's ERISA action is not a "constituent component" of his personal injury action, his ERISA action does not "constitute . . . the [same] bundle of rights and liabilities which derive from the . . . tortfeasor-injured person relationship . . . which should be disposed of in one unit of litigation."

IV.

In addition, even if the language of the doctrine could be stretched to cover the ERISA claim, we conclude that it was error for the district court to rely on the doctrine under these circumstances. Despite the doctrine's apparent rigidity, New Jersey courts have clearly stated that it is not to be applied in a rigid manner divorced from concepts of equity and fairness. "[P]arty fairness is critical in the application of the doctrine." Cogdell v. Hospital Center at Orange, 560 A.2d 1169, 1177 (N.J. 1989). "Equitable considerations can relax mandatory-joinder requirements when joinder would be unfair." Id., at 1041. (internal

12

quotations omitted). Indeed, "[t]he polestar of the application of the rule is judicial `fairness' ". DiTrolio, 662 A.2d at 504. Strict application of the doctrine here was simply not fair.

A "fairness" inquiry under the entire controversy doctrine has a specific focus: "Fairness, in the context of party joinder, focuses on basic fairness to all of the parties, especially those sued in the second suit who were prevented from participating in the first." Id. "Fairness is thus a protective concept that focuses primarily on whether defendants would be in a better position to defend themselves if the claims against them had been raised and asserted in the first litigation." Id. at 505. A key determination is whether the defendants "are now disadvantaged because they were not parties to thefirst litigation." Id.

Here, Fornarotto's employer was a defendant in both the personal injury action and the ERISA action. It knew early on that Fornarotto was claiming that he was disabled. In fact, the employer argues throughout its brief that Fornarotto's disability is the key issue in both the personal injury action and the ERISA action.

> In both cases, [Fornarotto] seeks to recover damages arising out of his alleged disability caused by injuries suffered in the same auto accident. Moreover, the same set of facts that were relevant in the [personal injury action] with respect to the determination whether [Fornarotto] was disabled and unable to work, and therefore entitled to recover damages for lost wages, are necessarily implicated in the [ERISA action].

Appellee's Br. at 8-9. Thus, the employer is in the same position to defend itself in this suit as it was in the personal injury action. Failure to join the ERISA claim in the initial state action would cause some redundancy, thus causing New Jersey-American some inconvenience, but that inconvenience does not rise to the level of prejudice or unfairness requiring application of the doctrine. Moreover, as will be noted below, some of the redundancy and inconvenience here is the direct result of New Jersey-American's tactical decision to remove the then pending

13

state ERISA action to federal court where it could no longer be consolidated with the state tort action.

Moreover, "[f]airness to the plaintiff must also be considered." DiTrolio, 662 A.2d at 505. In analyzing this prong of the fairness inquiry, New Jersey courts have usually focused upon whether the plaintiff had an opportunity to assert the barred claim in the initial litigation. In Cogdell, the court noted that joinder under the entire controversy doctrine was not required unless the "plaintiff had sufficient information to have included these defendants in the earlier lawsuit." 560 A.2d at 1169. Similarly, the court has also noted "the party whose claim is being sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original action." Cafferata v. Peyser, 597 A.2d 1101, 1104 (N.J. Super. A.D. 1991). Here, Fornorotto's initial personal injury claim was filed before he knew that he would be denied disability benefits from his employer. Although he could have sought to amend his complaint when he learned his employer would not pay disability benefits under his pension, we do not think that fact tilts the scales of fairness toward New Jersey American's side of this dispute.

Fornarotto worked for New Jersey-American Water Company for twenty-nine years. App. at 35. During those twenty-nine years he contributed a portion of his earnings to the pension plan from which he now seeks disability benefits. That pension was an integral part of his employment contract, and he has paid for that pension with his labor over the years. There is nothing on this record to suggest that Fornarotto was anything other than a good employee, and North-American has not suggested anything to the contrary. Moreover, even if it had, it would be unlikely that a subpar job performance would cause an employee to forfeit his pension. Accordingly, we do not understand how fairness is served by precluding Fornarotto from attempting to establish his entitlement to his disability pension.

Furthermore, Fornarotto's personal injury action and his ERISA action are separate and distinct causes of action. He has not split a single cause of action in two actions. His

14

case is unlike Crispin v. Volkswagenwerk, A.G., 476 A.2d 250 (N.J. 1984), where plaintiff, who first brought an automobile accident case, deliberately withheld a defective design claim against the automobile's manufacturer, and unlike Cogdell v. Hospital Center at Orange, 560 A.2d 1169 (N.J. 1989), where plaintiffs first sued physicians for birth injuries to an infant and subsequently sued the hospital and its staff for the same injuries. Fornarotto has not engaged in "calculated fragmentation of litigation" nor did he "for strategic reasons withheld claims concerning the underlying controversy . . . seek[ing] two bites at the apple." Joel, 688 A.2d at 1041.

These considerations would, in and of themselves, establish the unfairness of rigidly applying the entire controversy doctrine here. However, there is more. The defendants removed the ERISA claim from state to federal court. Had the claim remained in state court, it would, in all probability, have been joined with the then pending personal injury action. New Jersey Rule of Civil Procedure 4:5-1(b)(2), that was adopted to implement the entire controversy doctrine, see Pressler, Current N.J. Court Rules, Comment R. 4:5-1 (1993), imposes a continuing obligation on litigants to notify the trial court of any other pending or anticipated litigation. It provides:

> Each party shall include with the first pleading a certification as to whether the matter in controversy is the subject of any other action pending in any court or of a pending arbitration proceeding, or whether any other action or arbitration proceeding is contemplated; and, if so, the certification shall identify such actions and all parties thereto. Further, each party shall disclose in the certification the names of any other party who should be joined in the action. Each party shall have a continuing obligation during the course of the litigation to file and serve on all other parties and with the court an amended certification if there is a change in the facts stated in the original certification. The court may compel the joinder of parties in appropriate circumstances, either upon its own motion or that of a party.

15

Rule 4:5-1(b)(2). When Fornarotto's ERISA complaint was filed, it contained a Rule 4:5-1 certification which recited, inter alia, that the "matter in controversy is not subject to any other pending or contemplated court action or arbitration. . . ." App. at 3. Whether that statement remained accurate or not is immaterial. Had the employer filed an answer to the ERISA complaint in the New Jersey court, it would have been required to file its own Rule 4:5-1 certification. That certification would have informed the court that, in its opinion, the ERISA action was related to a pending court action, i.e., the personal injury action. The matters could then have been consolidated by the state trial courts. "It is the trial court's responsibility to determine whether or not joinder is appropriate in a given case, and thus litigants should be compelled to bring all actions at one time . . . . The trial court is vested with the discretion to sever or stay an inappropriate consolidation." DiTrolio, 662 A.2d at 506. However, New Jersey-American did not file an answer to Fornarotto's ERISA complaint. Instead, it removed the ERISA action to the district court and then, after it settled Fornarotto's personal injury action, moved to dismiss the ERISA action under the entire controversy doctrine.9 By removing the action to federal court and then filing a motion to dismiss after the personal injury action was settled, the employer's counsel clearly out maneuvered

_____

9. At oral argument, we were informed that there is an exchange of letters between counsel for Fornarotto and counsel who represented the employer in the personal injury action, who, we note, are not the employer's counsel in this case, concerning the wording of the release for the settlement of the personal injury action. Those letters could be read as indicating that there was an agreement whereby Fornarotto reserved his rights to proceed in his ERISA action despite having released the employer in the personal injury action. Those letters were apparently attached as exhibits to the summary judgment motion, but for reasons we cannot understand, the issue of Fornarotto's reservation of rights was never argued to the district court. Normally, we would reverse the district court's grant of summary judgment and remand for an evidentiary hearing on the reservation of rights. However, because we believe that the entire controversy doctrine should not be applied to bar Fornarotto's ERISA action, it is not necessary to remand for a determination as to whether there was in fact a reservation of rights to proceed in the ERISA action.

16

Fornarotto by not having to alert the state court to the need to consolidate the matters. Defense counsel thereby kept the entire controversy arrow poised to strike at the ERISA action following its removal to federal court. We do not question defense counsel's tactics or stewardship in doing so. However, neither can we ignore his tactics when conducting an inquiry into the fairness of applying the entire controversy doctrine. The entire controversy doctrine was never "intended to be a trap for the unwary." Joel, 688 A.2d at 1041. In fact, preclusion is always a "remedy of last resort." Olds, 696 A.2d at 645.

The limits of the doctrine are reached when its application "would result in significant unfairness or jeopardy to a clear presentation of the issues and a just result." Crispin v. Volkswagenwerk, A.G., 476 A.2d at 260. Indeed, "[i]mplicit in the development of the entire controversy doctrine is the recognition that economies and the efficient administration of justice should not be achieved at the expense of these paramount concerns." Id. "[B]ecause the entire controversy doctrine is an equitable principle, its applicability is left to judicial discretion based on the particular circumstances inherent in a given case." Mystic Isle Development Corp. v. Perskie & Nehmad , 662 A.2d 523, 530 (N.J. 1995)(citations omitted).10

Here, we hold that the district court exceeded the limits of the entire controversy doctrine by stretching it to apply to an ERISA action under the circumstances of this case.

_____

10. The specific holding in Mystic Isle was overruled in Olds v. Donnelly, 696 A.2d 633 (N.J. 1997). Prior to Olds v. Donnelly, it appeared that the entire controversy doctrine required that a claim of legal malpractice arising from an attorney's representation of his client in a lawsuit be asserted in the underlying lawsuit in which the legal malpractice arose. Realizing the havoc to the attorney-client relationship that follows from the application of the doctrine in such a situation, the New Jersey Supreme Court held that "the entire controversy doctrine no longer compels the assertion of a legal malpractice claim in an underlying action that gives rise to the claim." Id. at 643. However, the general principle of law from Mystic Isle referred to above is still valid.

17

V.

For all of the above reasons, we will reverse the district court and remand for further proceedings.

18

NYGAARD, Circuit Judge, dissenting.

I dissent because I believe the district court's conclusion, though harsh, is correct: the entire controversy doctrine applies. The doctrine bars successive lawsuits that "arise from related facts or the same transaction or series of transactions. It is the core set of facts that provides the link between distinct claims against the same or different parties and triggers the requirement that they be determined in one proceeding." DiTrolio v. Antiles, 662 A.2d 494, 502 (N.J. 1995). If the litigants are "likely to have to engage in additional litigation in order to conclusively dispose of their respective bundles of rights and liabilities" arising from the same series of transactions, the doctrine applies irrespective of whether the claims or issues are "independent cause[s] of action by technical common law definition or independent claim[s] which, in the abstract, [are] separately adjudicable." O'Shea v. Amoco Oil Co., 886 F.2d 584, 590–91 (3d Cir. 1989).

Both suits derive from the same event: the injury Mr. Fornarotto suffered at his place of employment. The personal injury suit sought damages for the physical injuries he suffered in that accident; the ERISA suit sought compensation for the wages he lost when he became totally disabled as a result of those injuries. In the personal injury suit, Mr. Fornarotto would have had to prove the extent of his injuries, including his total disability. In the ERISA suit, he would again have had to prove that his injuries left him totally disabled. Thus, both lawsuits stem from the same core set of facts: the extent of his injury resulting from the accident. When the accident occurred, the "bundles of rights" that accrued to Fornarotto included compensation for both (1) physical injury and (2) lost incom e resulting from that accident. I continue to believe that the entire controversy doctrine required Mr. Fornarotto to dispose of those rights in one proceeding.

Indeed, everyone acknowledges that the two suits share common facts. Although the personal injury suit involved issues of negligence that were not implicated in the ERISA suit, that is irrelevant. "The entire controversy doctrine does not require commonality of legal issues. Rather, the determinative consideration is whether distinct claims are

19

aspects of a single larger controversy because they arise from interrelated facts." DiTrolio, 662 A.2d at 504. Fornarotto admits that his accident caused his disability and is therefore common to both lawsuits.

The entire controversy doctrine has three objectives: "(1) to encourage the comprehensive and conclus ive determination of a legal controversy; (2) to achie ve party fairness . . . and (3) to promote judicial economy and efficiency by avoiding fragmented, multiple and duplicative litigation." Venuto v. Witco Corp., 117 F.3d 754, 761 (3d Cir. 1997). The opinion of the court does not discuss thefirst and third factors, which weigh in New-Jersey American's favor.

In arguing the "fairness" factor, Fornarotto's attorney relies mainly on equitable considerations, but does not cite a single case in which a New Jersey court assumed that the entire controversy doctrine was applicable but declined to enforce it out of "fairness" to one of the parties. Neither I nor the majority has found one either. "Fairness in the application of the entire controversy doctrine focuses on the litigation posture of the respective parties and whether all of their claims and defenses could be most soundly and appropriately litigated and disposed of in a single comprehensive adjudication." DiTrolio, 662 A.2d at 507. Fornarotto's personal injury suit was pending in the state court for six years. In settling that suit, Fornarotto released New-Jersey American from "any and all actions, causes of actions, claims, demands, costs, loss of services, expenses and compensation on account of, or in anyway growing out of" his injuries in the accident. (App. at 49.) To require relitigation of those same injuries in the ERISA suit is unfair to New-Jersey American and would certainly frustrate judicial economy.1

It could be argued that it would be unfair to bar the ERISA suit because, at the time Fornarotto filed the personal injury suit, he did not know he was disabled or that New-Jersey American would deny him disability

_____

1. Judicial economy is not merely to save us work; it redounds to all other suits and litigants who are thus denied attention and whose causes meanwhile must remain untried.

20

benefits. Again, this is true but irrelevant. The entire controversy doctrine does not take effect until one suit is finally determined. Rycoline Products, Inc. v. C & W Unlimited, 109 F.3d 883, 889 (3d Cir. 1997). Upon learning that New-Jersey American denied him disability benefits, Fornarotto should have simply amended his pending personal injury suit to add an ERISA claim. Instead, he chose to file a separate ERISA action in the same court on September 5, 1995. New-Jersey American removed that ERISA suit on October 27, 1995, and the parties settled the personal injury suit in November, 1996. Thus, two separate lawsuits arising out of the same event were pending in the same court for almost two months, and the ERISA suit then sat in a different court for over one year. This is precisely the type of fragmented litigation the entire controversy doctrine was meant to preclude.

Fornarotto's attorney had a statutory duty to bring the overlap to the court's attention when he first filed the ERISA suit, but he failed to do so. "A plaintiff who fails to allow the trial court the opportunity to supervise the entire controversy risks losing the right to bring that claim later." Mystic Isle Development Corp. v. Perskie & Nehmad, 662 A.2d 523, 530 (N.J. 1995). Fornarotto should not be saved by his argument that New-Jersey American avoided that same statutory duty by removing the ERISA suit before filing an answer in state court. New-Jersey American had a procedural right to remove, and removal does not bar operation of the entire controversy doctrine.2 Indeed, in Petrocelli v. Daniel Woodhead Co., 993 F.2d 27 (3d Cir. 1993), we upheld summary judgment in favor of a defendant who removed a suit to federal court and then claimed it was barred by the entire controversy doctrine.

_____

2. I am not without compassion for Mr. Fornarotto. Whatever legitimate rationale there may be that led his attorney to risk the ERISA action by filing a separate suit, it is not apparent from this record. Moreover, the timing of the removal, the first settlement, the letters exchanged (see Maj. Op. n.9), and the motion for summary judgment lead me to believe that Mr. Fornarotto suffered a procedural "sucker punch," from which he was unprotected, and by which he was denied disability benefits. The profession of law is reduced to a mere trade if not practiced with informed zeal and honor; I see a shortage of both here.

21

Although the defendant in Petrocelli did not know of the previous suit when it removed the later suit, there, as here, the plaintiff was aware that a similar suit was pending when he filed the second suit, but failed to inform the state court as required. Id. at 28.

For these reasons, which are essentially those given by the district court in its opinion, I dissent.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit