NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-2736
_____

JANICE LEE; BON HYUB KOO; R.J.M.K., Minor;
HON SEA LEE; YOON SOON LEE,
                                        Appellants

v.

TMZ PRODUCTIONS INC; DAILY NEWS LP; JOSEPH STEPANSKY;
ERIK BADIA; CORKY SIREMASZKO; DAVID HANDSCHUH; SHOWBIZ NEWS;
THE KOREA TIMES; CHEON JI HUN; UPTOWN MAGAZINE; NATALI RIVERS;
ROLLINGOUT; TERRY SHROPSHIRE; DIRTY SPORTS; CHURCH ILBO;
YOUR DAILY MEDIA; MAMO; ALL THINGS CRIME; TIGERDROPPINS;
JOHN DOES; JANE DOES 13-15; DAILY MAIL; SEOUL NEWS; IMBC INC;
MBC INC; LEE UN JOO, NEWS; MUNHWAI.COM; CHANNEL A INC.;
SPORTALL KOREA; K-AMERICAN POST; YTN NEWS; MALAYSIA
CHRONICLE; PAGESAY.COM; HEADLINES 365; JOHN AND JANE DOES 1-35
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. No. 2-15-cv-00234)
District Judge: Honorable William J. Martini
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 7, 2017

Before: CHAGARES, SCIRICA, and FISHER, *Circuit Judges*

(Filed: October 17, 2017)

———————————

OPINION[*]

———————————

**SCIRICA**, *Circuit Judge*

Plaintiff Janice Lee and members of her family appeal from the dismissal of their suit alleging numerous media outlets committed libel and libel per se, and negligently, recklessly, and intentionally inflicted emotional distress upon Lee and her family by falsely reporting Lee's involvement in a drug and prostitution ring. The District Court dismissed all claims, finding that the challenged articles were protected by the fair-report privilege under New Jersey state law. We will affirm.

## I.

### A.   Factual Background

On January 30, 2014, New York Attorney General Eric T. Schneiderman (NYAG) held a press conference and issued a press release to announce the arrest of 18 people in connection with a prostitution and drug trafficking ring targeting high-end clientele. Both the press conference and the press release described a ring that generated millions of dollars in illegal proceeds laundered through numerous front businesses. According to the NYAG, much of the ring's proceeds were generated through the sale of "party packs" consisting of cocaine and prostitutes, and the NYAG described aggressive efforts to

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

market these packages to out-of-town clientele arriving in New York for Super Bowl weekend. On a visual aid at the press conference, the NYAG displayed the names and photographs of the 18 individuals arrested and charged with various felony and misdemeanor counts. The press release also included the list of names. Among those listed was Plaintiff Janice Lee.

Lee is a New Jersey resident who works as a sales account manager for an international seller of wigs and hair products. At the time of her arrest, she was charged with conspiracy, criminal possession of a controlled substance, criminal sale of a controlled substance, and promoting prostitution. It appears that Lee was wrongly accused. According to a separate complaint Lee filed against the NYAG and other defendants, Lee's attorney immediately provided exculpatory evidence showing that she could not have committed the acts with which she was charged. Approximately a week after she was arrested, Lee was released from jail, and several days later, the charges against her were dropped.

In the wake of the NYAG press conference and press release—but prior to Lee's release—several media outlets published articles related to the investigation and arrests. Lee claims certain of these articles defamed her and inflicted emotional distress upon her and her family members. This appeal focuses on articles published by five outlets: (1) TMZ Productions, Inc.; (2) Daily News, L.P.; (3) The Korea Times New York, Inc.; (4) Your Daily Media; and (5) All Things Crime. The substance of each article and the specific statements Lee alleges are defamatory are described below.

      **1.**      **TMZ Productions, Inc.**

3

On January 30, 2014, TMZ posted to its celebrity and entertainment news site an article titled "Super Bowl Prostitution Bust Was Asian Invasion." The article was also shared on TMZ's Facebook and Twitter pages. Lee's Complaint alleges the article made the following defamatory remarks:

> The high-end, coke-fueled prostitution ring that was just busted on the high heels of Super Bowl weekend was comprised of a small army of Asian hookers . . . who take credit cards.
>
> NY officials say the prostitutes had their eyes set on Seahawks and Broncos fans who were coming in for the game.
>
> Officials say the ring made millions, with the help of pimps who fronted phony businesses to funnel the sex profits. The businesses included wig shops, a beauty supply store and a limo company.
>
> Johns were paying up to $10K a night for hookers and blow. The customers would do drugs and become impaired . . . and the girls would then figure out ways of fleecing them by charging even more.
>
> All of the women nailed -- in what NYPD calls Operation Shade of Beige -- are Asian, and used Korean code words to mask the drug deal. One code name for coke -- Soojaebi . . . a Korean noodle and vegetable soup. Mmmm Mmmm bad.

PA019–020. The article was accompanied by photographs showing the visual aid displayed at the NYAG press conference. Lee alleges these pictures are also defamatory because her full name and photograph appear on the visual aid.

## 2. Daily News, L.P.

On January 30, 2014, the Daily News, a New York–based newspaper, published on its website an article titled "'One-stop shopping' drug and prostitution ring, Asian Wave Escorts, busted ahead of Super Bowl." Lee alleges the article included the following defamatory statements:

4

> The prostitutes identified in court papers were no spring chickens. They ranged in age from 26 to 56 and four of them were in their 40s.
>
> The ring specialized in 'party-packs', where johns were enticed to buy cocaine and other drugs to go along with the sex.
>
> The arrested prostitutes were identified as: Young Mi Lee, 40, Jung Hee Jang, 43, Haiming Quan, 41, Nina Kim, 31, Hada Jang, 26, He Jung Chern, 42, Ji Young Moon, 40, and Janice Lee, 40.

PA025.

### 3.     The Korea Times New York, Inc. (KTNY)

KTNY, a newspaper serving the Korean-American community in New York, published a Korean-language article on January 30, 2014, titled "990 Apartments…Korean Community's Secret Exposed – Shocking Korean prostitution ring uncovered, internet advertising, soliciting clients by texting." Lee alleges the article defamed her by generally conveying:[1]

> There were a lot of criminal organizations before, but none like this one.
>
> NY prosecutors bust prostitution ring of 16 shocking the community.
>
> The organization was based out of a well-known Koreatown neighborhood and was highly organized into groups divided according to service level.

---

[1] Because the challenged KTNY article is a Korean-language article, Lee's complaint summarizes the allegedly defamatory remarks "in essence." PA029. KTNY submitted an English translation of the challenged article with its motion to dismiss. Lee did not dispute the accuracy of the translation, but moved to strike the translation as extraneous and hearsay. The District Court denied the motion to strike, finding "it would be unjust for Lee to rely on the Korean-language article in her complaint and then prevent KTNY from explaining the article's contents in a Rule 12(b)(6) motion to dismiss," *Lee v. TMZ Prods. Inc.*, No. 15-234, 2015 WL 5638081, at *3 (D.N.J. Sept. 24, 2015), and citing our precedent permitting consideration of documents "integral to or explicitly relied upon in the complaint" on a motion to dismiss, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). We find no fault with the District Court's decision.

> Customers could choose to acquire party packs with drugs and prostitution services at different levels.

> Services were advertised via internet advertisement sites. Once customers became regular, they were contacted via text message. The Super Bowl season was busy, with the ring sending bulk text messages to loyal customers.

PA029–030. Lee further alleges defamation on the basis that KTNY published her name and photograph by including a picture of the NYAG visual aid with the article.

### 4. Your Daily Media

Your Daily Media published on its entertainment website an article titled "Police Bust Prostitution Ring Promising Cocaine & Hooker Super Bowl Party Pack" on January 30, 2014. The article was written in a satirical tone, lamenting the potential pitfalls of a Super Bowl party with drugs and prostitutes if the ring had not been busted. Your Daily Media included a picture from the NYAG press conference showing the visual aid displaying Lee's name and photograph. Lee further alleges that the Your Daily Media article included the following defamatory statements:

> While some people might be upset that their big Sunday filled with whores and opiates is ruined, it's really for the best. And no, not because the hookers apparently steal money from their "Johns" while they are inebriated. Because those would have been just horrible Super Bowl parties.

> Add some hookers and guess what happens?

> Yup! Total hookers-in-the-way-of-the-game party-foul. HOW CAN I WATCH PAYTON [sic] MANNING TRY TO THREAD THE NEEDLE AGAINST THE TOP PASSING DEFENSE IN THE LEAGUE WITH ALL THESE HOOKERS IN FRONT OF THE TV? Can some friends just enjoy the #1 teams in both the AFC and NFC face off against each other without having to politely turn down an offer for sex? And no, you can't wait until halftime. The hookers are probably going to want to watch the halftime show. And lets [sic] not forget the cocaine. Are you really going to have a

6

face full of blow after your buddy Dave brings by this?

I mean, how rude would that be? Your buddy spends all day making an incredible football-themed spread and nobody's hungry because they went balls out on some yayo? Terrible. So thank you, New York Attorney General Eric Schneiderman. You just saved a lot of guacamole from going to waste.

PA046–047.

### 5. All Things Crime

All Things Crime posted to its true crime blog site on February 6, 2014, an article titled "Super Bowl Shocker: Interstate Child Prostitution Ring Busted in Connection to Big Game." The article focused on the allegations of prostitution to explain the author's disillusionment with the decadence of the Super Bowl. Like many of the other articles at issue, the All Things Crime article included a picture of the NYAG visual aid that shows Lee's name and photograph. Lee's complaint additionally identifies the following statements from the blog post as defamatory:

> Only now, days later, has a particular news story related to the Super Bowl provided some dreadful clarity. The essence of the big game has now been captured and brought into plain view. The headline says it all: "Super Bowl Prostitution Ring Forced Teens as Young as 13 into Sex Work."

> Obviously, kidnapping juveniles and forcing them into prostitution is a shocking and despicable crime. But should we really be surprised that such crimes are part of the equation on Super Bowl weekend?

PA041–042.

### B. Procedural History

Lee, her husband, her son, her father, and her mother filed the Complaint in this action on January 12, 2015, in the District of New Jersey. TMZ, the Daily News, KTNY, Your Daily Media, All Things Crime, and some of their employees were among the

7

media outlets and individuals named as defendants in the suit.[2]  The suit alleges the defendants committed libel and libel per se, and negligently, recklessly, and intentionally inflicted emotional distress upon Lee by "validating and rubber-stamping the bald, false allegations uttered by police and other government officials."  PA051.  Her family members assert derivative claims.

Defendants each moved for dismissal under Federal Rule of Civil Procedure 12(b)(6).  In an order dated August 10, 2015, the District Court dismissed all claims against the Daily News, KTNY, Your Daily Media, and All Things Crime.  On March 22, 2016, the District Court also dismissed all claims against TMZ.  In both written opinions, the District Court explained that the challenged articles are protected from libel and libel per se claims by the fair-report privilege under New Jersey law.  It further found that Plaintiffs' claims of emotional distress must fail because they are based on an unsuccessful defamation claim.  Plaintiffs appealed.[3]

---

[2] Certain other defendants named in the suit were either not served with the complaint or were served and failed to respond.  Those defendants are not implicated in this appeal.

[3] Appellees' briefs were due on or before January 20, 2017.  Appellee All Things Crime did not file its brief at that time, nor did it file any motion seeking an extension in advance of the deadline.  On March 17, 2017—over a month after Lee and her family members filed their consolidated reply brief—All Things Crime submitted its brief, accompanied by a short Motion for Extension of Time in Which to File Brief for Appellee.  Lee and her family members opposed the extension and filed a cross-motion seeking to strike All Things Crime's brief.  In light of All Things Crime's considerable delay in filing—with minimal explanation—we will not accept All Things Crime's untimely brief.  We will, however, grant the alternative relief proposed by All Things Crime and permit it to join in the brief filed by the Daily News, to which Lee and her family members had adequate opportunity to respond in their consolidated reply.

**II.**[4]

Lee argues the District Court erred in dismissing her defamation claims based on the fair-report privilege and disregarding her claims that the defendant news outlets and their employees acted with reckless disregard for the falsity of the articles they published. We disagree and will affirm the dismissal of Lee's defamation claims.

**A.**

The fair-report privilege is an exception to the general principle of defamation law that those who repeat or republish defamatory statements of another may themselves be held liable for defamation. *See Costello v. Ocean Cty. Observer*, 643 A.2d 1012, 1018 (N.J. 1994).[5] "The fair-report privilege reflects the judgment that the need, in a self-governing society, for free-flowing information about matters of public interest outweighs concerns over the uncompensated injury to a person's reputation." *Salzano v. N. Jersey Media Grp. Inc.*, 993 A.2d 778, 786 (N.J. 2010). Accordingly, the privilege "protects the publication of defamatory matters that appear in a report of an official action or proceeding, or of a meeting open to the public that deals with a matter of public

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1332 based on the parties' diversity of citizenship. We have jurisdiction under 28 U.S.C. § 1291. Our review of the District Court's dismissal of the Complaint on Rule 12(b)(6) grounds is de novo. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008).

[5] Because this is a diversity action, we must decide as a threshold matter which state's substantive law applies. The District Court applied New Jersey law, and the parties have not objected either before the District Court or on appeal. Given that a New Jersey resident is the target of the alleged defamation—giving New Jersey an interest in the outcome of the litigation—we see no reason to *sua sponte* challenge the District Court's choice of law. *See Schiavone Constr. Co. v. Time, Inc.*, 735 F.2d 94, 96 (3d Cir. 1984).

9

concern." *Id.* It recognizes that the author or publisher of a piece reporting on what transpired at an official proceeding "acts as an agent for persons who had a right to attend, and informs them of what they might have seen for themselves." *Medico v. Time, Inc.*, 643 F.2d 134, 141 (3d Cir. 1981).

"For the privilege to apply, the court must first determine whether the report is a full, fair, and accurate account of the official proceeding. The determination of whether a report is fair and accurate is an objective one." *Costello*, 643 A.2d at 1019. Under New Jersey law, once a report has been deemed full, fair, and accurate, "the privilege becomes absolute and cannot be defeated." *Salzano*, 993 A.2d at 797. In other words, once the full, fair, and accurate standard has been satisfied, "the state of mind of the publisher is irrelevant."[6] *Id.* at 781.

In evaluating whether a report is full, fair, and accurate, we keep in mind that "'[i]t is not necessary that [the account] be exact in every immaterial detail . . . . It is enough that it conveys to the persons who read it a substantially correct account.'" *Costello*, 643 A.2d at 1019 (alterations and omission in original) (quoting Restatement (Second) of Torts § 611 cmt. f (1976)). But, in order to be fair, "it is necessary that nothing be omitted or misplaced in such a manner as to convey an erroneous impression to those who hear or read it." *Id.*

**B.**

---

[6] To the extent earlier cases cited by Lee, including *Costello*, 643 A.2d at 1018–19, suggested that malice on the part of the publisher could defeat the fair-report privilege, they were overruled by *Salzano*, 993 A.2d at 796–97.

Like the District Court, we find the articles challenged by Lee are entitled to the protections of the fair-report privilege because they present full, fair, and accurate reports of the NYAG press conference and press release describing the alleged drug and prostitution ring—including Lee's alleged involvement.[7]

The facts described in each of the articles are derived from the NYAG press release and press conference report on the alleged activities of the drug and prostitution ring.[8] For example, while Lee's Complaint cites as defamatory statements in several articles regarding the "party packs" allegedly offered by the members of the ring, the NYAG press release uses the term "party packs" and describes the ring as having "charged customers for sex and drugs as a package deal." PA344–345. Likewise, the claims in the articles that the alleged prostitutes used code words and small businesses as fronts to disguise their scheme mirror the statements made by the NYAG, as does the suggestion that the ring targeted Super Bowl attendees. Because the articles are based on the facts as stated by the NYAG, the articles "convey[] to the persons who read [them] a substantially correct account" of the NYAG press conference and press release. *See Costello*, 643 A.2d at 1019. The Complaint does not identify any facts about the ring

---

[7] Lee's contention that the application of the fair-report privilege cannot be decided on a Rule 12(b)(6) motion is incorrect. Whether an allegedly defamatory report is full, fair, and accurate is for the court to determine as a matter of law. *See Salzano*, 993 A.2d at 792.

[8] We find no error with the District Court's consideration of the NYAG press release at the Rule 12(b)(6) stage. The government-issued press release is a matter of public record, and matters of public record may be considered on a motion to dismiss. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

11

contained in these articles that depart from the facts as explained by the NYAG.

Instead, Lee objects primarily to the association of her name and photograph with these allegations. In short, she contends the NYAG press conference and press release were wrong. But whether an article is entitled to the protections of the fair-report privilege does not hinge on the accuracy of the underlying official document or statement. *See, e.g.*, *Lavin v. N.Y. News, Inc.*, 757 F.2d 1416, 1420 (3d Cir. 1985) ("[W]hether the FBI agents misinterpreted the situation, had incorrect information, or even consciously misstated the facts in the affidavit, there can be no liability on the part of the defendants for republishing the contents of an official document, so long as their account is reasonably accurate and fair."). Lee's ultimate exoneration is not determinative. At the time the articles in question were published, the NYAG's allegations against Lee were actively pending.[9] *See Reilly v. Gillen*, 423 A.2d 311, 327 (N.J. Super. Ct. App. Div. 1980) ("[T]he truth of an alleged libel must be measured 'as of the time of the defamatory publication.'") (quoting Restatement (Second) of Torts § 581a cmt. g (1977)). Lee's name is listed among the women arrested in the NYAG press release. Lee's photograph was displayed as part of the visual aid at the NYAG press conference.[10] Accordingly, it was fair and accurate for the media outlets to report on

---

[9] For this reason, Lee's reliance on *Costello* is misplaced. The articles at issue in *Costello* were deemed misleading because they described sexual harassment allegations in the present tense, conveying to readers that the claims were actively pending, when in fact no complaint had ever been filed. *See* 643 A.2d at 1019.

[10] We agree with the District Court that there is no reason to treat the media outlets' publication of the NYAG's visual aid—and thus Lee's photograph—differently from the NYAG's press release and oral statements. The visual aid was presented by the NYAG

12

Lee's arrest. Lee's distress at having been falsely accused is understandable. But her grievance is with the NYAG, not the media outlets that fairly reported on the allegations against her.

Lee also suggests the articles are misleading—and accordingly not entitled to the fair-report privilege—because certain portions omit the words "accuse" or "allege," giving the impression Lee was guilty of the conduct described. But we do not evaluate the application of the fair-report privilege on the basis of selective quotes. "[W]e presume that the public reads the entire article when we assess its fairness and accuracy." *Salzano*, 993 A.2d at 524. Each of the challenged articles makes sufficiently clear that Lee and the other individuals implicated were arrested in a police operation; none gives the impression that the arrestees had been convicted. "In a fair report, the defendant is not required . . . to justify every word of the alleged defamatory matter; it is sufficient if the substance, the gist, the sting of the libelous charge be justified . . . ." *Costello*, 643 A.2d at 1027 (omissions in original) (internal quotation marks and citation omitted). Here, the sting of the libelous charge—that Lee was arrested and accused of involvement in the drug and prostitution ring—was justified by the NYAG's press conference and press release. "[V]iewed on the backdrop of the entire report," *Salzano*, 993 A.2d at 793, the isolated statements Lee points to do not render the articles unfair or misleading.

Lee also takes issue with the tone and language used in the challenged articles.

---

at an official government meeting and is therefore eligible for the protections of the fair-report privilege. *Cf. Lavin*, 757 F.2d at 1420–21 (assessing photograph and headline before applying fair-report privilege).

This "jocular commentary," as it was termed by the District Court, does not preclude the application of the fair-report privilege. While the colorful language used—particularly notable in the TMZ and Your Daily Media articles—may be distasteful or insulting to certain readers, the use of such language is not actionable for defamation. *See DeAngelis v. Hill*, 847 A.2d 1261, 1268 (N.J. 2004) ("The use of epithets, insults, name-calling, profanity and hyperbole may be hurtful to the listener and are to be discouraged, but such comments are not actionable."); Restatement (Second) of Torts § 566 cmt. d (1977) ("If all that the communication does is to express a harsh judgment upon known or assumed facts, there is no more than an expression of opinion of the pure type, and an action of defamation cannot be maintained."). The hyperbolic and satirical language used in the challenged articles is not itself actionable, and the articles in their entirety remain full, fair, and accurate accounts of the facts presented by the NYAG.

Because the challenged articles "convey[] to the persons who read [them] a substantially correct account," *Costello*, 643 A.2d at 1019, of the NYAG press conference and press release, the articles are protected under the fair-report privilege, and Lee's defamation claims must be dismissed.

## III.

Even if the fair-report privilege did not protect the challenged articles, Lee's libel and libel per se claims would still fail because she has not adequately alleged actual malice on the part of the media outlets and their employees.

Under New Jersey law, in order to prevail on a defamation claim, a plaintiff must show (1) a false and defamatory statement; (2) communication of the statement to a third

14

party; and (3) fault amounting to negligence or actual malice on the part of the publisher. *DeAngelis*, 847 A.2d at 1267–68. Lee argues the final prong is satisfied in her case by a mere showing of negligence because she is a private figure. But New Jersey courts "have applied the actual-malice standard to defamation lawsuits brought by private-figure plaintiffs against media defendants that have purportedly published erroneous news stories regarding a matter of public interest or concern." *Durando v. Nutley Sun*, 37 A.3d 449, 457 (N.J. 2012); *see also id.* at 458 ("Today, in New Jersey, the actual-malice standard protects both media and non-media defendants who make statements involving matters of public concern, regardless of whether the targets of the statements are public figures or private persons."). The criminal investigation discussed in these articles is manifestly a matter of public concern, and Lee does not argue otherwise.

To meet the actual malice standard, Lee must plead "that the publisher[s] knew the statement[s] to be false or acted in reckless disregard of [their] truth or falsity." *Dairy Stores, Inc. v. Sentinel Publ'g Co., Inc.*, 516 A.2d 220, 233 (N.J. 1986). This standard imposes a heavy burden. "That an editor or reporter *should have* known or *should have* doubted [the] accuracy of an article before publishing it is insufficient to show reckless disregard for the truth." *Durando*, 37 A.3d at 459 (alteration and emphases in original) (internal quotation marks and citation omitted). Rather, New Jersey courts have required "[t]o act with reckless disregard of the truth, a defendant must *actually* doubt[] the veracity of the article." *Id.* (alteration and emphasis in original) (internal quotation marks and citation omitted). A mere lack of professionalism will not suffice. "[T]he actual-malice test will shield careless acts of publication that would be considered

15

irresponsible by common journalistic standards." *Id.*

The allegations in Lee's complaint rise to no more than professional negligence. Lee contends the media outlets published the challenged articles "without fact-checking, without investigation, without interviewing those involved, and with no regard for accuracy." PA015. She contends the conduct by the defendants was "far below the standard of practice which governs the news media, according to long established principles in the news reporting profession." PA016. She alleges they "engaged in abject failure to interview Mrs. Lee or any other suspect; failed to review documents; [and] failed to communicate with Mrs. Lee's counsel." PA018. Taken as true, these allegations might amount to a "careless act[] of publication that would be considered irresponsible by common journalistic standards." *Durando*, 37 A.3d at 459. But they don't amount to an allegation that the defendants "*actually* doubt[ed] the veracity" of the articles implicating Lee. *Id.* Accordingly, Lee has failed to plead actual malice on the part of the defendant media outlets and their employees. Even if the fair-report privilege did not apply to the challenged arguments, her defamation claims would be dismissed.

**IV.**

We agree with the District Court that Lee's claims for negligent, reckless, and intentional infliction of emotional distress fail along with her claims for defamation. "There is . . . a certain symmetry or parallel between claims of emotional distress and defamation that calls for consistent results." *Decker v. Princeton Packet, Inc.*, 561 A.2d 1122, 1129 (N.J. 1989); *see also G.D. v. Kenny*, 15 A.3d 300, 318 (N.J. 2011) ("The intentional- and negligent-infliction-of-emotional-distress claims also fail because those

16

torts are predicated on the same conduct alleged in the defamation claim."). In this case, because Lee's claims for emotional distress are based on the same conduct as her libel claims—which fail under the fair-report privilege—her emotional distress claims must also be dismissed.

Similarly, the failure of Lee's underlying defamation and emotional distress claims requires dismissal of the derivative claims asserted by her family members. *See Petrocelli v. Daniel Woodhead Co.*, 993 F.2d 27, 30 (3d Cir. 1993) (dismissing derivative loss-of-consortium claim). We will affirm the District Court's dismissal of the claims brought by Lee's husband, son, father, and mother.

## V.

For the foregoing reasons, we will affirm the District Court's August 10, 2015, order dismissing all claims against the Daily News, KTNY, Your Daily Media, All Things Crime, and their employees. We will also affirm the District Court's March 22, 2016, order dismissing all claims against TMZ Productions, Inc.[11]

---

[11] Plaintiffs argue in passing that the District Court erred by dismissing their claims with prejudice in lieu of giving them an opportunity to amend their Complaint. Because dismissal of the claims is based on a finding that the articles are immunized from any defamation claims based on the fair-report privilege, amendment would be futile, and dismissal with prejudice was warranted. *See, e.g.*, *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000).