270 N.J. Super. 458 (1994)
637 A.2d 546
NANCY FISHER, PLAINTIFF-APPELLANT,
v.
KENNETH YATES AND DOROTHY YATES, DEFENDANTS-RESPONDENTS. NANCY FISHER, PLAINTIFF-APPELLANT,
v.
YATES ENTERPRISES OF NEW JERSEY, INC. AND LAWRENCE A. PRAY, INC., DEFENDANTS-RESPONDENTS,
v.
KENNETH YATES AND DOROTHY YATES, THIRD PARTY DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 15, 1993.
Decided February 15, 1994.
*461 Before Judges SHEBELL, LONG and LANDAU.
Michael J. Nizolek argued the cause for appellants (Backes & Hill, attorneys; Mr. Nizolek, of counsel and on the brief).
Robert F. Gaskill argued the cause for respondent Lawrence A. Pray, Inc. (Begley, McCloskey & Gaskill, attorneys; Mr. Gaskill, on the brief).
Thomas F. Bullock argued the cause for respondents Yates (Slater & Tenaglia, attorneys; Mr. Bullock on the brief).
The opinion of the court was delivered by LANDAU, J.A.D.
These consolidated appeals by plaintiff Nancy Fisher (plaintiff) arise from the denial of plaintiff's motion, heard just one week before trial, to amend the pleadings to join an additional party and to assert new contradictory theories of liability (Fisher I),[1] and from the Law Division's dismissal of plaintiff's subsequent complaint *462 on grounds of collateral estoppel. (Fisher II).[2] The second complaint asserted theories precluded by the denial of plaintiff's motion to amend the pleadings in Fisher I against different defendants. We consider these two appeals in a single opinion because both cases involve substantially similar operative facts, and affirm.

Fisher I
Plaintiff is the owner of landlocked real property known as Block 3201, Lot 14 on the Tax Map of Southampton Township. The property, used mainly for logging purposes, has been owned by plaintiff's family for the past 150 years. For public road access, plaintiff and her family have used a ten to twelve foot wide sand road that traverses the adjacent Block 3201, Lot 3 ("the servient tenement") to Friendship Road, formerly Powell Place Road.
On April 6, 1987, Allen Joyce and Mary H. Joyce, the previous owners of the servient tenement, signed an ingress/egress easement agreement conveying to plaintiff and her since deceased husband, their successors and assigns, and to the owners of lots 8, 13, and 16, use of the sand road in perpetuity. Under the agreement, the Joyces reserved the right to relocate the sand road on their property, so long as such relocation "provide[s] access to Powell Place Road or New Road for ingress and egress of the same type and quality that presently exists."
It later became known that when the Joyces executed the agreement they were not the record owners of the servient tenement because, three weeks prior to executing the April 1987 agreement, the Joyces, who owned a substantial amount of land in the area, executed a deed to the Yates transferring a parcel of property which included the servient tenement. The Yates assert that the deed was in error, to the extent it purported to transfer the servient tenement. They note that, although the deed's metes *463 and bounds description included the servient tenement located in Southampton Township, it described all property conveyed as being in Tabernacle Township, where the lands intended to be conveyed were located. The copy of the deed contained in the record on appeal has the name "Southampton" crossed out, supposedly before the deed was executed. Significantly, on May 10, 1988, the Yates executed a deed which reconveyed to the Joyces for the nominal consideration of $1.00 the property located in Southampton (the servient tenement). The Yates retained all property located in Tabernacle township.
On the same date, the Joyces transferred to Yates Enterprises of New Jersey, Inc. (Yates Enterprises) one portion of Block 3201 Lot No. 3, located in Southampton Township, for $37,488. On January 31, 1989, the Joyces transferred the remainder of Block 3201, Lot No. 3, including the servient tenement, to Yates Enterprises for an additional consideration of $575,000.00. This, according to the Yates, evidenced the Joyces' obvious original intent in 1987 to transfer to them only the property located in Tabernacle Township, and not the Southampton property containing the servient tenement.
Following their 1989 purchase, the Yates sought to obtain a major subdivision approval from the Township of Southampton in order to build a residential development in Block 3201, Lot 3. To facilitate development, the Yates sought to relocate the easement given by the 1987 agreement. The relocated easement was over a fifty foot wide asphalt-paved roadway which required plaintiff to make a left turn from the sand road into the paved right of way leading through a partial cul-de-sac to a road which provided direct access to Powell Place Road. Over plaintiffs' objection, the local planning board gave final approval to the Yates for the entire subdivision, including the relocated easement.
On April 26, 1991, plaintiff filed a complaint for declaratory judgment that the relocated easement was not "of the same type and quality that presently exists," as required by the April 1987 agreement, and also sought other relief of an equitable nature.
*464 At the time that complaint was filed, the servient tenement was owned by the Yates' corporate entity, Yates Enterprises. However, the Yates' responsive pleadings admitted personal ownership of the servient tenement as alleged in the complaint. The Yates counterclaimed for a judgment declaring the relocated easement of the "same type and quality" as the one given by the agreement.
On March 17, 1992, plaintiff sought a temporary restraining order to prevent the Yates from physically blocking the sand road. In a letter opinion dated March 19, 1992, Judge Myron H. Gottlieb denied the application for a temporary restraining order. The opinion also memorialized an agreement between both counsel (plaintiff was then represented by different counsel) to enter into a stipulation of facts and to resolve the case on cross-motions for summary judgment.
On May 22, 1992, a hearing on the cross-motions was held. The sole issue raised and considered at the hearing was whether the relocated easement was "of the same type and quality" as the easement granted by the agreement. Plaintiff's counsel argued that the new easement was not of the same type or quality because of the likelihood that children would be playing in the area due to residential development planned along the relocated easement. The judge found that factually and legally, the relocated easement was of the same type and quality as the old easement as it provided ready road access. In consequence, the judge entered summary judgment for the Yates and ordered that a previously filed lis pendens be lifted.
Plaintiff then dismissed her attorney, and on May 29, 1992, filed a pro se motion seeking a stay pending appeal of the lis pendens order. Plaintiff's new counsel filed a motion for reconsideration, and Yates cross-moved for attorneys' fees. Following oral argument, the judge granted a stay pending a hearing on the motion for reconsideration.
At the latter hearing, counsel argued that plaintiff's farming vehicles could not maneuver the turn into the relocated easement. During the earlier cross-motions for summary judgment, plaintiff's *465 prior counsel had indicated that plaintiff's vehicles could in fact utilize the new easement. Nevertheless, the judge granted the motion to reconsider and left for trial the limited question whether plaintiff's equipment could negotiate the turn required by the relocated easement. The Yates were awarded their attorney's fees incurred after the judgement on the cross-motions for summary judgment was entered.
Only on October 14, 1992, nearly eighteen months after the complaint was filed, did plaintiff's counsel request a title search of the servient tenement. The search revealed that prior to signing the 1987 agreement, the Joyces had apparently conveyed the servient tenement, and also that Yates Enterprises and not the Yates individually, was the record owner of the servient tenement when suit was commenced in 1991. Based on this newly discovered information, on November 25, 1992, plaintiff's counsel filed a Notice of Motion for leave to amend the complaint seeking the following additional relief: 1) that the agreement be declared a nullity; 2) that Yates Enterprises be added as a defendant; 3) that an easement by prescription be found; and 4) that subject to proofs by defendants as to need to relocate the easement, it be moved to the minimum extent necessary.
A hearing on the motion was held on December 4, 1992, a week before the scheduled trial date. The trial judge denied the motion, reasoning that at a certain point, "litigants must be judicially estopped from asserting a position to the court that not only contradicts their pleadings up to then, but was available  or knowledge of which was available to them."
A bench trial was held on December 10, 1992. Plaintiff's expert opined that vehicles with fifty or sixty foot wheelbases could not make the turn required by the relocation. The expert agreed that vehicles with a forty foot wheelbase could maneuver through the relocated easement. At the conclusion of the trial, the judge found that the vehicles normally used by plaintiff could use the relocated easement. Judgment was entered in defendants' favor. The appeal in Docket No. A-2672-92T2 followed.

*466 Fisher II

While A-2672-92T2 was pending, plaintiff filed her second complaint, joining Yates Enterprises and Lawrence A. Pray, Inc. (Pray) on May 7, 1993. This complaint sought judgment declaring the 1987 agreement a legal nullity, declaring that plaintiff had perfected a prescriptive easement over the sand road which was the subject of the agreement, and for such other equitable relief as the court deemed just (Fisher II). Plaintiff also filed a lis pendens on the servient tenement, by then partially owned by defendant-respondent Pray.
In July, 1992, Pray had purchased from Yates Enterprises one of the Southampton lots on which the original sand road easement was located. Shortly after purchasing this property, Block 3210, Lot 3.11, Pray, under contract with a third party, began construction of a dwelling on the lot. Thus, Pray was named as a defendant in Fisher II.
On June 2, 1993, Pray filed its answer, separate defense, counterclaim, a crossclaim against Yates Enterprises, and a third party complaint against the Yates. On that same date, Pray obtained an order to show cause seeking dismissal from plaintiff's complaint and discharge of the lis pendens.
On June 18, 1993, oral argument on the order to show cause was held before Judge Gottlieb, who had presided over Fisher I. Following oral arguments, he dismissed the complaint as to all parties on the basis of collateral estoppel. An order dismissing the complaint and the lis pendens was entered on July 7, 1993.
On July 21, 1993, plaintiff filed a motion for leave to appeal, for consolidation with the Fisher I, and for a stay pending appeal. On August 17, 1993, this court entered an order granting leave to appeal and consolidation but denying the stay.

Discussion
On appeal in Fisher I, plaintiff contends that the trial court abused its discretion by denying plaintiff's motion to amend the *467 pleadings when it was discovered that "two critical factual underpinnings of the entire case were in fact not true." The alleged critical facts are that the agreement which formed the basis of the complaint was a nullity because it was not signed by the record owners of the servient tenement, and that plaintiff sued the wrong party in interest because Yates Enterprises, and not the Yates, owned the servient tenement.
While motions for leave to amend pleadings are to be liberally granted, they nonetheless are best left to the sound discretion of the trial court in light of the factual situation existing at the time each motion is made. R. 4:9-1; Du-Wel Products v. U.S. Fire Ins., 236 N.J. Super. 349, 364, 565 A.2d 1113 (App.Div. 1989) certif. denied, 121 N.J. 617, 583 A.2d 316 (1990); Keller v. Pastuch, 94 N.J. Super. 499, 229 A.2d 264 (App.Div. 1967). "It is well settled that an exercise of that discretion will be sustained where the trial court refuses to permit new claims and new parties to be added late in the litigation and at a point at which the rights of other parties to a modicum of expedition will be prejudicially affected." Du-Wel Products, supra, 236 N.J. Super. at 364, 565 A.2d 1113 (emphasis added). Although it is a significant factor that the pleader will lose a cause of action under the entire controversy doctrine if the motion for leave to amend the pleadings is denied, it is "not necessarily the dispositive consideration, particularly where the assertion is so late as to prejudice other parties." Pressler, Current N.J. Court Rules, Comment R. 4:9-1; (citing Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 375 A.2d 675 (App.Div.), certif. denied 75 N.J. 528, 384 A.2d 507 (1977)).
As we view it, the trial judge's denial of plaintiff's motion was not an arbitrary exercise of discretion. We note that it was plaintiff's own failure to secure a title search of the servient tenement prior to commencing litigation which caused the case to be pleaded, discovered, and defended under a theory which proved contradictory to the one plaintiff belatedly sought to assert on the eve of trial.
*468 Plaintiff's goal in filing the complaint was to prevent relocation of the easement. She failed to do so under two alternative theories. Plaintiff now seeks to reap a benefit from her lack of diligence, gaining a second chance (or third, if the summary judgment proceeding is included) to challenge the relocation. Thus, on the eve of trial the trial judge concluded, "litigants must be judicially estopped from asserting a position to the Court that not only contradicts their pleadings up to then, but was available  or knowledge of which was available to them."
Had the motion been granted, the Yates' interest would have been severely prejudiced. They had obtained final subdivision approval to construct residential homes, and were ready to proceed. Moreover, the trial would have been delayed until discovery on the agreement's validity and the prescriptive easement issues was completed.
On appeal in Fisher II, plaintiff challenges the judge's dismissal of the complaint to the extent based on collateral estoppel. She contends, correctly, we think, that the issues of the validity of the agreement and the existence of a prescriptive easement were not actually litigated in the prior lawsuit, because they were foreclosed by the denial of the motion to amend the pleadings. We affirm dismissal of the complaint, however, under the entire controversy doctrine.
New Jersey's entire controversy policy is recognized in R. 4:30A which states:
Non-joinder of claims or parties required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided by R. 4:64-5 (foreclosure actions) and R. 4:67-4(a) (leave required for counterclaims or crossclaims in summary actions).
In 1989, the Supreme Court extended the entire controversy doctrine to mandate joinder of "all parties with a material interest, one that can affect or be affected by the judicial outcome of a legal controversy." Cogdell v. Hospital Center at Orange, 116 *469 N.J. 7, 23, 560 A.2d 1169 (1989). The fundamental principle behind the entire controversy doctrine is that
the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy.
[Cogdell, supra, 116 N.J. at 15, 560 A.2d 1169].
The doctrine as originally applied to joinder of claims was designed "to eliminate delay, prevent harassment of a party and unnecessary clogging of the judicial system, avoid wasting the time and effort of the parties, and promote fundamental fairness." Ibid., (quoting Barres v. Holt, Rinehart and Winston, Inc., 74 N.J. 461, 465, 378 A.2d 1148 (1977) (Schreiber, J., dissenting)). In general, "the polestar for the application of the rule is judicial `fairness'". Reno Auto v. Prospect Park S. & L., 243 N.J. Super. 624, 630, 581 A.2d 109 (App.Div. 1990). The doctrine serves "the twin goals of efficient judicial administration and fairness to litigants." Busch v. Biggs, 264 N.J. Super. 385, 396, 624 A.2d 1017 (App.Div. 1993).
The Cogdell Court explained that in the present day litigation explosion, the judicial system must "conserve judicial resources; judicial energy is not inexhaustible or endlessly renewable. Thus, a rule that can control litigational extravagance and reduce piecemeal litigation is a necessity." Id., 116 N.J. at 24, 560 A.2d 1169.
We are cognizant that application of the doctrine is limited in that, "as in the case of all other preclusionary doctrines ... the party whose claim is being sought to be barred must have had a fair and reasonable opportunity to have fully litigated that claim in the original action." Cafferata v. Peyser, 251 N.J. Super. 256, 261, 597 A.2d 1101 (App.Div. 1991) (holding that a patient's settlement of a prior action brought against him by doctors for payment of a bill did not bar medical malpractice action against doctors). Moreover, the doctrine does not bar related claims that were unknown, or had not arisen or accrued at the time of the *470 original action. See Pressler, Current N.J. Court Rules, Comment 4:30A at 1030; Zaromb v. Borucka, 166 N.J. Super. 22, 27, 398 A.2d 1308 (App.Div. 1979).
The Supreme Court has set forth a three part test for preclusion of the subsequent action: "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." Watkins v. Resorts Intern. Hotel & Casino, 124 N.J. 398, 412, 591 A.2d 592 (1991) (citations omitted). Unlike collateral estoppel, claim preclusion applies not only to matters actually litigated in the prior action, "but to all relevant matters that could have been so determined." Ibid.; Mori v. Hartz Mountain Development, 193 N.J. Super. 47, 472 A.2d 150 (App.Div. 1983). Thus, where a litigant seeks to remedy a single wrong, he/she should assert all theories in a single action because theories not raised in the first suit will be precluded in a later action. Ibid., 124 N.J. at 413, 591 A.2d 592.
As those elements are satisfied here, we hold that plaintiff's complaint in Fisher II is precluded. The judgment in Fisher I was a valid final judgment on the merits. In both cases plaintiff sought essentially the same relief, restoration of the original easement location. In Fisher I, the theory was that the new easement was not of the same type or quality as the one given by the agreement; while in Fisher II, the underlying theory was one of prescriptive right. Nonetheless, both claims arose out of the same transaction or occurrence.
Pray purchased its lot from Yates Enterprises, the real party in interest in Fisher I. The Yates had consented to the request of plaintiff's counsel that Yates Enterprises be named as the proper defendant in Fisher I. Indeed, the Yates' interests were clearly regarded as congruent with those of Yates Enterprises by the plaintiff, because Yates Enterprises was the record owner when the Yates were named as defendants. In these circumstances, *471 Yates Enterprises would be bound by the judgment in this litigation. See Fortugno v. Hudson Manure Co., 51 N.J. Super. 482, 500-501, 144 A.2d 207 (App.Div. 1958).
Moreover, in Fisher I, plaintiff had a fair and reasonable opportunity to raise the claims asserted in Fisher II, notwithstanding the late motion to amend the pleadings. N.J.S.A. 46:21-1 imputes constructive knowledge to subsequent judgment creditors or purchasers of any deed which has been duly recorded in the proper county recording office. Plaintiff, as a potential judgment creditor, must be charged with notice of the deeds that were recorded in the county office. A title search of the servient tenement should have been made prior to filing the complaint in Fisher I, and plaintiff had over eighteen months to do so after filing the complaint. Quite apart from Fisher II, plaintiff had already been given two opportunities to challenge the relocation: (1) during the cross-motions for summary judgment, and (2) at the trial, under a theory which plaintiff had expressly repudiated during the summary judgment hearing. We see no good reason why plaintiff must now be afforded a third opportunity to challenge the relocation. To do so would frustrate the important goal of judicial efficiency by encouraging piecemeal litigation, and would serve no equitable purpose disclosed by the record.
The result in this case is, in fact, equitable. Irrespective of whether an easement by prescription or by necessity existed over the sand road, the clear purpose of the easement was merely to serve as a road access for plaintiff's landlocked property. The original easement consisted of a ten to twelve foot wide sand road, whereas the relocated easement consists of a paved fifty foot wide road. Given the judge's finding that plaintiff's vehicles can maneuver the relocated easement, and that it is of the same type and quality as the previous easement, we conclude that there was no sound basis for a court of equity to have precluded relocation of the access easement. See Kruvant v. 12-22 Woodland Ave. Corp., *472 138 N.J. Super. 1, 350 A.2d 102 (Law Div. 1975), aff'd, 150 N.J. Super. 503, 376 A.2d 188 (1977).
Affirmed.
NOTES
[1] Docket No. A-2672-92T2.
[2] Docket No. A-2618-92T2.