**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2029-23

LARRY SCHWARTZ and
NJ 322, LLC,

      Plaintiffs-Appellants,

v.

NICHOLAS MENAS, ESQ.,
COOPER, LEVENSON, APRIL,
NIEDELMAN & WAGENHEIM,
PA, ERIC FORD, PULTE
HOMES, KDL REALTY
MANAGEMENT, LLC, and
THERESA L. MENAS,

      Defendants-Respondents.

_____

Argued September 30, 2025 – Decided October 23, 2025

Before Judges Firko and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-2487-23.

Giovanni De Pierro argued the cause for appellants (De Pierro Radding, LLC, attorneys; Giovanni De Pierro, Alberico De Pierro, and Davide De Pierro, on the briefs).

Robert W. McAndrew argued the cause for respondent Theresa L. Menas (McAndrew Vuotto, LLC, attorneys; Robert W. McAndrew, of counsel and on the brief).

John L. Slimm argued the cause for respondents Nicholas Menas, Esq. and Cooper, Levenson, April, Niedelman & Wagenheim, PA (Marshall Dennehey, PC, attorneys; John L. Slimm and Jeremy J. Zacharias, on the brief).

Trevor J. Cooney argued the cause for respondents Eric Ford and KDL Realty Management, LLC (Archer & Greiner, PC, attorneys; Trevor J. Cooney, on the brief).

James G. O'Donohue argued the cause for respondent Pulte Homes (Hill Wallack LLP, attorneys; James G. O'Donohue, on the brief).

PER CURIAM

Plaintiffs Larry Schwartz and NJ 322, LLC (NJ 322) (collectively plaintiffs) appeal from three orders entered on December 15, 2023 dismissing their complaint with prejudice against defendants Nicholas Menas, Esq., Cooper, Levenson, April, Niedelman & Wagenheim, PA (Cooper Levenson), Eric Ford, Pulte Homes, KDL Realty Management, LLC, and Theresa L. Menas (collectively defendants) for failure to state a claim upon which relief can be granted pursuant to Rule 4:6-2(e) and as barred under the entire controversy doctrine (ECD). After our de novo review, we conclude the trial court properly dismissed the complaint with prejudice on ECD grounds and affirm.

I.

Factual Background

The pertinent facts and procedural history are set forth in our Supreme Court's opinion, Schwartz v. Menas, 251, N.J. 556, 561-63 (2022) (Schwartz I), and our prior unpublished opinions in Schwartz v. Menas, Nos. A-3187-18, A-4292-18 (App. Div. Nov. 6, 2020) (slip op. at 3-17) (Schwartz II), and Schwartz v. Menas, Nos. A-2481-22, A-2482-22 (App. Div. Jan. 2, 2025) (slip op. at 4-22) (Schwartz III).[1]  We incorporate by reference the facts and procedural history in those prior opinions, giving plaintiffs the benefit of every reasonable inference.  See Baskin v. P.C. Richard & Son, 246 N.J. 157, 171 (2021).

The dispute involves a property located in Williamstown, Monroe Township known as "Duncan Farms."  Initially, Duncan Farms was owned by Washington Development, LLC (WDC).  Fred Azimi was WDC's managing member.  322 West Associates, LLC (322 West) originally planned to purchase Duncan Farms.

In March or April 2006, Ford, the land acquisition manager for Pulte Homes, negotiated with Azimi to purchase Duncan Farms, which consists of

---

[1] On September 3, 2025, the Supreme Court denied certification.  ___ N.J. ___ (2025).

approximately thirty-seven acres. On May 22, 2006, WDC entered into an agreement of sale with 322 West to purchase Duncan Farms for $2,160,000. 322 West was represented by Nicholas Menas.[2] Nicholas contacted a developer whom Schwartz knew, Salvatore Surace, about Duncan Farms, who then contacted Schwartz, his business associate. Schwartz I at 562. Schwartz met with Nicholas and Ford a few days later.

Nicholas and Ford represented to Schwartz that the property would be zoned and developed as a "free market" development and would turn into a very profitable investment. In addition, Nicholas and Ford represented to Schwartz that if he got involved in such a transaction, he could either purchase the real estate and complete the development or sell it to Pulte Homes "approved and improved." Nicholas told Schwartz that he was "politically connected" and could "get things done."

Subsequently, Nicholas formed NJ 322 with Schwartz and Surace as sole members, for the purpose of purchasing Duncan Farms. Schwartz III, (slip op. at 6). Schwartz retained Nicholas and his law firm, Cooper Levenson, as counsel for the real estate transaction. On June 29, 2006, 322 West—Duncan Farm's

---

[2] We refer to parties sharing a common last name by their first names to avoid confusion. By doing so, we intend no disrespect.

A-2029-23

original purchaser—assigned the final version of the Agreement of Sale to NJ 322 for $2,140,000. Michael Borini, a longtime friend of Nicholas and Ford, was the sole member of 322 West.

The Agreement of Sale stated the property was intended to be a mixed-use development consisting of a minimum of 100 market rate active adult townhome units and 20,000 square feet of commercial retail and office space. Nicholas represented 322 West in the transaction. There were four amendments made to the Agreement of Sale addressing extension deposits and amending the Agreement of Sale to change the intended development to a "residential community comprised of 100% affordable housing units" subject to the Council for Affordable Housing's (COAH)[3] requirements. Schwartz claimed he never met with Borini. After agreeing to have the property rezoned, Surace withdrew from the project, leaving Schwartz as the sole member of NJ 322. Schwartz I at 562.

Later in 2006, Nicholas and Ford met with a representative of Monroe Township Development Company, LLC (MTDC) and proposed an entirely distinct real estate transaction consisting of congruent properties in another part

---

[3] COAH was formerly an agency of the Department of Community Affairs. COAH was abolished effective March 20, 2024. See S.50, A.4 (2024).

of Monroe Township known as "Pork Chop Hill." Ford informed MTDC that Pulte Homes was interested in developing Pork Chop Hill as a free market development, without any affordable housing obligations.

Consequently, the affordable housing development in Duncan Farms would be utilized by MTDC and Pulte Homes to satisfy COAH obligations in the Pork Chop Hill free market residential development, resulting in substantial savings and profits. In addition to serving as the conduit for the transfer of the affordable housing obligation from Pulte Homes's intended Pork Chop Hill Develop to Duncan Farms, MTDC would purchase Pork Chop Hill and sell it "approved and improved" to Pulte Homes, which in turn would develop a substantial free market residential development on Pork Chop Hill.

In January 2007, Ford contacted MBI Development Company, Inc. and proposed Duncan Farms to it as a potential "100% residential affordable housing development"—and not the original "market rate" development. The transaction was negotiated. In February 2007, Schwartz and Surace attended an affordable housing workshop presented by the New Jersey Housing and Mortgage Finance Agency. According to Nicholas, this was the first time Schwartz heard of the term "affordable housing."

6

On June 13, 2007, Duncan Farms was sold pursuant to a Purchase and Sale Agreement between MBI and MTDC with the intent of MBI purchasing the property to develop a 100% residential affordable housing development. Schwartz was not a party to this transaction and claimed he had no knowledge of the Purchase and Sale Agreement at the time. Nicholas served as legal counsel to MTDC relative to the transaction. On October 10, 2007, Nicholas, on behalf of Schwartz, filed a builder's remedy lawsuit alleging that Monroe Township had not met its affordable housing obligations pursuant to COAH under the Fair Housing Act, N.J.S.A. 52:27D-301 to -329. This lawsuit was later settled and NJ 322 subsequently obtained approvals for an affordable housing development.

In late 2007, 322 West and NJ 322 executed a general release, which served as both a mutual release and completion of NJ 322's buyout of 322 West for $250,000 pursuant to the Purchase and Sale Agreement. On November 5, 2007, Schwartz forwarded two checks totaling $50,000 to Cooper Levenson's trust account, and on January 4, 2008, he wired $200,000 to the firm's trust account. That same day, Nicholas wrote a check for $200,000 drawn from Cooper Levenson's trust account, made it payable to KDL, and forwarded it to Ford, KDL's managing partner.

7

On January 9, 2008, Ford wrote two checks in the amounts of $125,000 and $27,000 (totaling $152,000) drawn from KDL's bank account, which were made payable to TNM Development Consulting (TNM). The checks were never deposited into TNM's bank account. Instead, Theresa Menas, Nicholas's spouse, deposited both checks into their personal bank account.

In Spring or Summer 2008, Schwartz met with Martin G. Bershtein, an attorney with experience in obtaining financing for affordable housing projects through COAH, four or five times. Schwartz III, (slip op. at 7). Bershtein formulated "very preliminary" models to assist Schwartz in developing an affordable housing project at Duncan Farms. Ibid. Schwartz informed Nicholas and Ford about his meetings with Bershtein.

On July 30, 2008, Nicholas and Ford presented Schwartz with a memorandum stating that MTDC would pay Schwartz double the purchase price of Duncan Farms. Schwartz was given an option to either: (1) retain control of the affordable housing development or (2) enter into a deal with MTDC and MBI whereby plaintiffs and MTDC would receive the property with all improvements after the thirty-year deed restrictions and income control expired. Nicholas and Ford convinced Schwartz to forego Bershtein's assistance and "stay the course" with them.

A-2029-23

On May 7, 2009, Schwartz—still ostensibly without knowledge of the aforementioned MTDC-MBI Purchase and Sale Agreement—entered into an Assignment and Assumption of Agreement (Assignment) with MTDC. The Assignment stated that Duncan Farms would be developed with 100% affordable housing units. Schwartz assigned the Agreement of Sale to MTDC for $2,000,000.

In the Fall of 2009, MTDC and plaintiffs attempted to renegotiate their contractual obligations. MTDC proposed to pay plaintiffs a substantially lesser amount than agreed upon in the initial NJ 322-MTDC Assignment. Nicholas advised Schwartz to reach an agreement with MTDC. After unsuccessful negotiations between Schwartz and MTDC, a representative of MTDC, its attorney, and Nicholas met twice with Azimi to discuss MTDC's purchase of Duncan Farms directly from WDC. Schwartz claimed he had no knowledge of these meetings. In late January or early February 2010, Ford communicated to MTDC that Pulte Homes was no longer interested in pursuing the Pork Chop Hill real estate transaction development.

On February 27, 2010, pursuant to Ford's instructions and direction, MTDC terminated the NJ 322-MTDC Assignment. Schwartz claimed he had no knowledge of the termination until April or May of 2010. Nicholas then

A-2029-23

organized a meeting between Schwartz, MBI, and WDC to discuss the sale of Duncan Farms and approvals directly to MBI. In May or June 2010, plaintiffs, WDC, and MBI, entered into a Purchase and Sale Agreement pursuant to which Schwartz and WDC sold Duncan Farms and the requisite approvals to MBI for $1,980,000. MBI became the property developer for Duncan Farms and constructed a 132-unit affordable housing complex on the property. Schwartz I at 560. Plaintiffs invested $700,000 to $800,000 in the Duncan Farms project and ultimately received approximately $480,000 from MBI and $630,000 from MDTC.

## Schwartz I, II, and III

On March 8, 2011, plaintiffs filed a complaint[4] against Nicholas, Cooper Levenson, Ford, Pulte Homes, MBI, and Brad Ingerman, MBI's president (Schwartz I).[5] Schwartz I alleged legal malpractice violations of the Rules of Professional Conduct and breach of contract against Nicholas and Cooper Levenson. Schwartz I at 564. Schwartz I also alleged defendants conspired to commit fraud, conversion, tortious interference with a contract, and prospective economic advantage based on his allegation that defendants deprived him of the

---

[4] Docket number MON-L-3904-11.

[5] The Schwartz I complaint is not part of this record.

A-2029-23

opportunity to construct an affordable housing complex in Monroe Township. Ibid.

On November 5, 2012, plaintiffs amended the Schwartz I complaint adding Ford and Pulte Homes as defendants. The amended complaint alleged Ford and Pulte Homes, together with Nicholas, Ingerman, and MBI prior to the presentation of the project, "formulated and advanced a plan to have the [p]roperty re-zoned to affordable housing" in April 2007. Plaintiffs alleged pursuant to this plan, Pulte Homes would get the "benefit of COAH coverage" for this property if it was re-zoned as affordable housing. According to the "plan," plaintiffs averred MBI was going to acquire the property. Plaintiffs alleged implementation of this plan cured Monroe Township's COAH deficiency, and MDTC was "the conduit" through which the proposed affordable housing development would benefit Pulte Homes.

Schwartz sought damages pursuant to N.J.S.A. 2A:13-4,[6] compensatory damages, lost profits, and attorney's fees. Schwartz filed a second complaint and again alleged that Nicholas and Cooper Levenson violated the Rules of Professional Conduct and alleged breach of contract against both arising from

---

[6] N.J.S.A. 2A:13-4 states: "If an attorney shall neglect or mismanage any cause in which he [or she] is employed, he [or she] shall be liable for all damages sustained by his [or her] client."

the Egg Harbor Township project. <u>Schwartz I</u> at 566. The Egg Harbor Township project is not part of this appeal.

During discovery, plaintiffs served an expert report authored by Dr. Robert S. Powell, Jr., on the issue of lost profits damages. On September 12, 2018, defendants filed a motion to bar Dr. Powell's report and testimony on the grounds New Jersey's "new business rule" applied and operates as a per se bar to plaintiffs' attempt to recover lost profits. Defendants contended that because plaintiffs lacked experience in real estate development and affordable housing projects, they constituted a new business. Plaintiffs conceded they received more money for Duncan Farms than they paid for it. On October 12, 2018, the trial court granted defendants' motion to bar the lost profits damages report and testimony of Dr. Powell and for summary judgment.

Plaintiffs appealed from that ruling, and we affirmed. <u>Schwartz II</u> (slip op. at 28). Plaintiffs filed a petition for certification with the New Jersey Supreme Court, which was granted. <u>Schwartz v. Menas</u>, Nos. A-3187-18, A-4292-18 (App. Div. Nov. 6, 2020), <u>certif. granted</u>, 246 N.J. 139 <u>and</u> 246 N.J. 145 (2021).

The Supreme Court held that the development projects constituted new businesses but rejected the new business rule as a per se ban on claims brought

by a new business for lost profit damages. Schwartz I at 561. Rather, the Supreme Court noted a distinction between the proofs required for a new business versus an established business. Ibid. The matter was remanded to the trial court for a determination as to whether plaintiffs' lost profits evidence was sufficient to establish their claim for damages pursuant to a "reasonable certainty" standard applicable to new businesses. Ibid.

On remand, plaintiffs' expert, Dr. Powell, testified at an N.J.R.E. 104 hearing on January 19, and 20, 2023, as to plaintiffs' lost profits damages. On March 9, 2023, the trial court issued an amended order, which granted defendants' motions for summary judgment barring Dr. Powell from testifying at trial. Plaintiffs appealed from the March 9, 2023 amended order.

Schwartz IV

On August 9, 2023, while the appeal from Schwartz III was still pending, plaintiffs filed a complaint against Nicholas, Cooper Levenson, Ford, Pulte Homes, KDL Realty Management, LLC (KDL), and Theresa alleging legal malpractice (counts one, two, and three); fraud (count four); conversion (count five); unjust enrichment (count six); violations of the New Jersey Racketeer Influenced and Corrupt Organizations Act, N.J.S.A. 2C:41-1 to -6.2 (RICO)

13

(count seven); conspiracy to commit violations of RICO (count eight); conspiracy to commit fraud, conversion, and unjust enrichment (count nine); aiding and abetting fraud, conversion, unjust enrichment, violations of RICO, and conspiracy to commit same (count ten); negligent supervision/respondent superior as to Cooper Levenson (count eleven); and negligent supervision/respondent superior as to defendant Pulte (count twelve) (Schwartz IV). KDL and Theresa were not named defendants in plaintiffs' previous complaints.

Defendants moved to dismiss the Schwartz IV complaint with prejudice under Rule 4:6-2(e) in lieu of filing answers on the grounds of: (1) the ECD; (2) res judicata and collateral estoppel; and (3) exceeding the statute of limitations. Defendants argued all of the causes of action alleged in the subject complaint are based on the same transactions and factual allegations as the 2011 complaint in Schwartz I.

Plaintiffs opposed the motion and argued the newly filed Schwartz IV complaint was based on recently discovered facts and claims, which could not have been known prior to the disposition of Schwartz I. Plaintiffs contended defendants "fraudulently concealed" for years through "perjury and obstruction

14

of discovery" the facts necessary to permit plaintiffs to file these "newly discovered" claims.

On December 15, 2023, the trial court conducted oral argument on defendants' motions to dismiss. In an oral opinion, the trial court granted defendants' motion and dismissed plaintiffs' Schwartz IV complaint with prejudice. The trial court determined the newly filed complaint was barred by the ECD and res judicata because it was duplicative of Schwartz I. The trial court reasoned, "all of this goes back to Duncan Farms . . . the parties are identical. The actions are identical. The underlying transactions are identical."

The trial court emphasized this case "wastes the time and effort of the parties," "undermines fundamental fairness," "create[s] delay," "harassment," and "clogging of the judicial system." The trial court noted that plaintiffs had full opportunity to file a motion for leave to file and serve an amended complaint following remand from the Supreme Court but failed to do so. Memorializing orders were entered. This appeal followed.

On appeal, plaintiffs argue:

> (1) the trial court erred in finding the Schwartz IV complaint must be dismissed for failure to file a motion to amend the complaint on remand in the 2011 Schwartz I matter; and

A-2029-23

(2) the trial court erred in finding plaintiffs' <u>Schwartz IV</u> complaint must be dismissed because it is barred by preclusionary rules.

## II.

We begin our discussion with a review of the principles governing our analysis. <u>Rule</u> 4:6-2 provides:

> Every defense, legal or equitable, in law or fact, to a claim for relief in any complaint, counterclaim, cross-claim, or third-party complaint shall be asserted in the answer thereto, except that the following defenses, . . . may at the option of the pleader be made by motion, with briefs: . . . (e) failure to state a claim upon which relief can be granted . . . .
>
> [<u>R.</u> 4:6-2(e).]

"<u>Rule</u> 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo." <u>Baskin</u>, 246 N.J. at 171 (citing <u>Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C.</u>, 237 N.J. 91, 108 (2019)). Thus, "we owe no deference to the trial judge's conclusions." <u>State v. Cherry Hill Mitsubishi</u>, 439 N.J. Super. 462, 467 (App. Div. 2015) (citing <u>Rezem Fam. Assocs., LP v. Borough of Millstone</u>, 423 N.J. Super. 103, 114 (App. Div. 2011)).

"At this preliminary stage of the litigation the [c]ourt is not concerned with the ability of [a] plaintiff[] to prove the allegation[s] contained in the

complaint." <u>Printing Mart-Morristown v. Sharp Elecs. Corp.</u>, 116 N.J. 739, 746 (1989) (citing <u>Somers Constr. Co. v. Bd. of Educ.</u>, 198 F.Supp. 732, 734 (D.N.J. 1961)). "For purposes of analysis [a] plaintiff [is] entitled to every reasonable inference of fact." <u>Ibid.</u> (citing <u>Indep. Dairy Workers Union v. Milk Drivers & Dairy Emps. Loc. No. 680</u>, 23 N.J. 85, 89 (1956)). "The examination of a complaint's allegations of fact . . . should be one that is at once painstaking and undertaken with a generous and hospitable approach." <u>Ibid.</u>

In undertaking our review,

> it is essential to canvass the complaint to determine whether a cause of action can be found within its four corners. In so doing, we must accept the facts asserted in the complaint as true. A reviewing court must search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned from an obscure statement of claim, opportunity being given to amend if necessary. Accordingly, all reasonable inferences are given to plaintiff. Courts should grant these motions with caution and in the rarest instances.
>
> [<u>Ballinger v. Del. River Port Auth.</u>, 311 N.J. Super. 317, 321-22 (App. Div. 1998) (emphasis added) (internal quotation marks and citations omitted) (alteration in original).]

"Questions of law are reviewed de novo," and the "application of res judicata is a question of law . . . " <u>Manalapan Realty, L.P. v. Twp. Comm.</u> 140 N.J. 366, 378, (1995); <u>Walker v. Choudhary</u>, 425 N.J. Super. 135, 151 (App.

Div. 2012) (quoting Selective Ins. Co. v. McAllister, 327 N.J. Super. 168, 173 (App. Div. 2000)).

The ECD set forth in Rule 4:30A is a procedural rule characterized as New Jersey's specific application of traditional res judicata principles. "The [ECD] 'generally requires parties to an action to raise all transactionally related claims in that same action.'" Largoza v. FKM Real Est. Holdings, Inc., 474 N.J. Super. 61, 79 (App. Div. 2022) (quoting Carrington Mortg. Servs., LLC v. Moore, 464 N.J. Super. 59, 67 (App. Div. 2020)). "That mandate encompasses not only matters actually litigated but also other aspects of a controversy that might have been litigated and thereby decided in an earlier action." Higgins v. Thurber, 413 N.J. Super. 1, 12 (App. Div. 2010).

"The doctrine has three fundamental purposes: '(1) the need for complete and final disposition through the avoidance of piecemeal decisions; (2) fairness to parties to the action and those with a material interest in the action; and (3) efficiency and the avoidance of waste and the reduction of delay.'" Bank Leumi USA v. Kloss, 243 N.J. 218, 227 (2020) (quoting DiTrolio v. Antiles, 142 N.J. 253, 267 (1995)).

Application of the ECD follows principles of equity and "does not apply to unknown or unaccrued claims." Dimitrakopoulos, 237 N.J. at 99 (quoting

Wadeer v. N.J. Mfrs. Ins. Co., 220 N.J. 591, 606 (2015)).  "When a court decides whether multiple claims must be asserted in the same action, its initial inquiry is whether they 'arise from related facts or the same transaction or series of transactions.'"  Id. at 109 (quoting DiTrolio, 142 N.J. at 267).  The determinative consideration by the court is not whether the "successive claims share common legal issues," but rather "'whether distinct claims are aspects of a single larger controversy because they arise from interrelated facts.'"  Ibid. (quoting DiTrolio, 142 N.J. at 271).

The purpose of the ECD is to encourage comprehensive and conclusive litigation determinations, avoid fragmentation of litigation, and promote party fairness and judicial efficiency.  R. 4:30A(1).  The ECD is to be considered and applied in the interest of justice, as it is not an artificial bright line rule.  J-M Mfg. Co. Inc. v. Phillips & Cohen, LLP, 443 N.J. Super. 447, 459 (App. Div. 2015).  The decision of whether to apply the doctrine is ultimately "one of judicial fairness and will be invoked in that spirit."  Archbrook Laguna, LLC v. Marsh, 414 N.J. Super. 97, 104 (App. Div. 2010) (quoting Crispin v. Volkswagenwerk, A.G., 96 N.J. 336, 343 (1984)).

"[A] court should not preclude a claim under the [ECD] if such a remedy would be unfair in the totality of the circumstances and would not promote the

A-2029-23

[doctrine's] objectives of conclusive determinations, party fairness, and judicial economy and efficiency." Bank Leumi USA, 243 N.J. at 227-28 (alteration in original) (citing Dimitrakopoulos, 237 N.J. at 119). When considering "fairness to the party whose claim is sought to be barred, a court must consider whether the claimant has 'had a fair and reasonable opportunity to have fully litigated that claim in the original action.'" Gelber v. Zito P'ship, 147 N.J. 561, 565 (1997) (quoting Cafferata v. Peyser, 251 N.J. Super. 256, 261 (App. Div. 1991)).

Under New Jersey law, the ECD will preclude a litigant from relitigating disputes already resolved in an earlier proceeding if the following are satisfied: (1) the parties in the later action are identical to or in privity with those in the prior action; (2) the claim in the later action arises out of the same transaction or occurrence as the claim in the earlier one; and (3) the judgment in the prior action is valid, final, and on the merits. Fisher v. Yates, 270 N.J. Super. 458, 470 (1994) (citing Watkins v. Resorts Int'l Hotel & Casino, Inc., 124 N.J. 398, 412 (1991)).

Claim preclusion is applicable not only to matters actually litigated in the prior action, "but to all relevant matters that could have been so determined." Watkins, 124 N.J. at 412 (citing Angel v. Bullington, 330 U.S. 183, 192-93 (1947)). The non-joinder of claims required to be joined under the ECD, "shall

result in the preclusion of the omitted claims." R. 4:30A. See also, Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310, 322-23 (1995). An application of the doctrine requires "a party who has elected to hold back from the first proceeding a related component of the controversy be barred from thereafter raising it in a subsequent proceeding." Wm. Blanchard Co. v. Beach Concrete Co., Inc., 150 N.J. Super. 277, 292-93 (App. Div. 1977).

### III.

First, plaintiffs argue the trial court erred in dismissing the Schwartz IV complaint because they failed to file a motion to amend the complaint on remand from the Supreme Court. Plaintiffs contend the remand was for a "narrow and defined purpose" that "could not reasonably have contemplated a motion to amend the complaint" to bring "newly discovered" claims following dismissal of the 2011 matter. Plaintiffs assert the trial court was instructed on remand to merely conduct further proceedings to determine whether their lost profits evidence was sufficient to establish their damages claim with a reasonable degree of certainty. Plaintiffs claim the trial court made a "sua sponte" argument on behalf of defendants, which plaintiffs had no opportunity to oppose. Plaintiffs also argue any "burden" should "fall on defendants' shoulders" because they delayed discovery and should not benefit from their own "misconduct."

21

Rule 4:9-1 affords great liberality to motions to amend. The motion is to be "liberally granted and without consideration of the ultimate merits of the amendment." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:9-1. Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006).

The trial court emphasized that plaintiffs knew about the so-called "evidence" on August 9, 2019. The matter was remanded from August 17, 2022, until March 9, 2023—over six months. The trial court correctly noted that plaintiffs "had every opportunity to file a motion to amend," to add "newly discovered evidence and claims" and incorporate them into the 2011 Schwartz I matter.

In Bustamante v. Borough of Paramus, we allowed the plaintiff to file a motion to amend his complaint after a remand from the Supreme Court. 413 N.J. Super. 276, 292 (App. Div. 2010). The trial court cited Bustamante in its decision for the proposition that the broad power of amendment should be liberally exercised at any stage of the proceeding including on remand after appeal unless undue prejudice would result or the amendment would be futile. Id. at 298.

Here, the Supreme Court remanded the matter to the trial court and did not retain jurisdiction. Thus, we reject plaintiffs' argument that the remand was

limited only to determine whether plaintiffs' lost profits evidence was sufficient to establish their claim for damages with a reasonable degree of certainty. Plaintiffs could have and should have moved to amend their Schwartz I complaint on remand. There was no bar to their doing so. Therefore, plaintiffs' argument lacks merit.

IV.

Plaintiffs next contend the trial court erred in finding Schwartz IV must be dismissed based on preclusionary rules. Plaintiffs cite to Kaselaan & D'Angelo Assocs. v. Soffian to support their argument that since there was no valid, final judgment entered on the merits relative to Schwartz I when Schwartz III was filed, the ECD is inapplicable and claim preclusion does not apply. 290 N.J. Super. 293, 301 (App. Div. 1996). Kaselaan was a case regarding a breach of an employment contract where we found the ECD was inapplicable. Id. at 296.

In Kaselaan, the plaintiffs filed a diversity action in the federal district court of New Jersey against defendant. 290 N.J. Super. at 296. Plaintiffs wanted to name additional defendants as parties to the action, but the court warned doing so would destroy subject matter jurisdiction, which was based on diversity. Id. at 297. One year later, the plaintiffs filed a second action in state court alleging

23

different causes of action. Ibid. Subsequently, the defendant filed a motion to dismiss, arguing the State action was barred by New Jersey's ECD. Ibid. The trial court granted the defendants' motions to dismiss, assuming the federal action would be remanded to State court due to lack of subject matter jurisdiction based on diversity and subsequently leave two of the same actions pending in State court. Ibid.

On appeal, we addressed whether the ECD required dismissal of the second, state court action, even though the initial federal action had not yet concluded when the second action was brought. Kaselaan, 290 N.J. Super. at 299-300. We held that the ECD only precludes successive suits involving related claims and "does not require dismissal when multiple actions involving the same or related claims are pending simultaneously." Id. at 299 (emphasis added). Instead, we laid out "other appropriate means" that "prevent unfairness to affected parties or an undue burden on the court system," two goals the doctrine aims to alleviate. Ibid.

Kaselaan is readily distinguishable from the matter under review because here there is only one State court matter and no federal action pending. There, we held the ECD does not apply to preclude two suits that are "pending simultaneously." Ibid; see also Archbrook Laguna, LLC v. Marsh, 414 N.J.

Super. 97, 102 (App. Div. 2010). Moreover, <u>Kaselaan</u> involved issues of party joinder and potentially lack of subject matter jurisdiction, which are not present in this case. 290 N.J. Super. at 297.

We conclude plaintiffs had a fair and reasonable opportunity to fully litigate their claims in their original action. Moreover, plaintiffs had twelve years' worth of litigation regarding the Duncan Farms transaction and the opportunity to amend their complaint on remand, which they chose not to do.

As stated, the first ECD element requires the parties in the later action to be identical to or in privity with those in the prior action. <u>Fisher</u>, 270 N.J. Super. at 500. Privity is used to "say that the relationship between the one who is a party on the record and another is close enough to include the other within the res judicata.'" <u>State v. Brown</u>, 394 N.J. Super. 492, 500 (App. Div. 2007) (citing <u>Zirger v. Gen. Accident Ins. Co.</u>, 144 N.J. 327, 338 (1996)) (quoting <u>Bruszewski v. U.S.</u>, 181 F.2d 419, 424 (3rd Cir. 1950)).

"A relationship is usually considered 'close enough' only when the party is a virtual representative of the non-party, or when the non-party actually controls the litigation." <u>Collins v. E.I. Dupont De Nemours & Co.</u>, 34 F.3d 172, 176 (3rd Cir. 1994) (applying New Jersey law); <u>see</u> <u>also</u> <u>Moore v. Hafeeza</u>, 212 N.J. Super. 399, 403-04 (Ch. Div. 1986) (stating that "[g]enerally, one person is

in privity with another and is bound by and entitled to the benefits of a judgment as though he was a party when there is such an identification of interest between the two as to represent the same legal right. . . .").

Here, Schwartz I commenced in 2011. Plaintiffs named Nicholas, Cooper Levenson, Ford, Pulte Homes, Brad Ingerman, and MBI as defendants. In Schwartz IV, which was commenced in 2023, plaintiffs included all of the above defendants from Schwartz I, with the addition of two new defendants: Theresa and KDL. Therefore, the parties in both matters are almost identical. Moreover, we are satisfied that the newly added defendants—Theresa and KDL—are in privity with defendants named in Schwartz I for purposes of the ECD.

First, the only rationale for naming Theresa in Schwartz IV is based on the allegation she deposited two checks into a personal bank account she shared with her husband Nicholas, and not TNM's bank account, for which the checks were intended. However, the record shows Theresa was an authorized signatory on the TNM bank account, and therefore she would have had the authority to deposit money into that account.

Additionally, there is no evidence Theresa deposited the check for any alternative or personal purpose, other than to aid her husband Nicholas, whose

claims had already been adjudicated. Based on the record before us, we are satisfied that Theresa was in privity with Nicholas for purposes of the ECD.

KDL was named in Schwartz IV because Ford, originally named as a defendant in Schwartz I, is alleged to be KDL's managing member. KDL is the company that Nicholas allegedly wrongfully wrote checks to be payable to and later forwarded to Ford.

The second ECD element requires the claim "arise from related facts or the same transaction or series of transactions." Archbrook Laguna, LLC, 414 N.J. Super. at 105 (quoting Ditrolio, 142 N.J. at 267). The ECD "does not require commonality of legal issues." Rather, the determinative consideration is "whether distinct claims are aspects of a single larger controversy because they arise from interrelated facts." Ditrolio, 142 N.J. at 271.

Here, the trial court found that Schwartz IV arises out of the same transaction or occurrence as Schwartz I. The trial court stated: "[Plaintiffs] now file this action, . . . , which fundamentally is the Duncan Farms litigation. It's the 2011 [litigation] with a wrinkle, and that is . . . plaintiffs contend[] there was new information learned on August 9, 2019[,] about where . . . monies went and who received them." Further, the trial court explained:

> All of this goes back to Duncan Farms. All of it colloquially was an allegedly broad conspiracy among

> all of . . . defendants to deprive . . . plaintiffs of profits
> and the ability to go forward with the Duncan Farms
> project. The parties are identical. The actions are
> identical. The underlying transactions are identical.
> And maybe there is one new fact that was learned in
> 2019, but again, . . . it's a liberal amendment standard
> that can be addressed even on a remand.

The record supports that determination. Despite Schwartz alleging that he learned in 2019 that Nicholas, his prior attorney, allegedly wrote a wrongful check and deposited it into his own personal bank account, these facts still relate back to the transaction or occurrence that form the basis of Schwartz I.

The third ECD element requires the judgment of the first action to be valid, final, and on the merits. Fisher, 270 N.J. Super. at 470. Plaintiffs' primary argument on appeal focuses on this element, enumerated further in section 3.5 of Rule 4.30A, which states: "the doctrine does not apply to preclude a successive action if the first action did not result in any adjudication on the merits." R. 4:30A (3.5). See Arena v. Borough of Jamesburg, Middlesex Cty., 309 N.J. Super. 106, 110 (App. Div. 1998). The dismissal of Schwartz IV satisfied the ECD's objectives. Plaintiffs' claims were fully adjudicated in Schwartz I and on remand from the Supreme Court.

In sum, plaintiffs do not get another "bite at the apple" simply because Schwartz I was still pending when Schwartz IV was filed. As aptly noted by the

28

trial court, all of the allegations in plaintiffs' complaints "should have been in one litigation" noting this case was the "poster child" for why we have the ECD and res judicata.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division